## McMILLAN *v.* McMILLAN.

1. DIVORCE—EXTREME CRUELTY—BURDEN OF PROOF—EVIDENCE—CLEAN HANDS.

> Plaintiff wife *held,* not entitled to decree of divorce from 20-year marriage, where it appears from the record that she failed to sustain her burden of proof as to extreme cruelty and there was testimony of past misconduct and of a present questionable relationship with an unmarried man.

2. APPEAL AND ERROR—DIVORCE—QUESTIONS REVIEWABLE—NEWLY-DISCOVERED EVIDENCE.

> Whether or not trial court erred in failing to reopen proofs to allow defendant husband to present newly-discovered evidence is not determined, where it is held that insufficient evidence was produced at the trial to justify the granting of a decree of divorce.

Appeal from Cheboygan; Fenlon (Edward H.), J. Submitted April 5, 1961. (Docket No. 14, Calendar No. 48,824.) Decided September 23, 1961.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 17 Am Jur, Divorce and Separation §§ 46–87, 272, 437–439.

Bill by Minnie McMillan against Daniel McMillan for divorce on grounds of extreme and repeated cruelty. Decree for plaintiff. Defendant appeals. Reversed.

*J. Gilbert Quail,* for defendant.

KELLY, J. Plaintiff filed bill of complaint for divorce (November 5, 1956) alleging extreme and repeated cruelty. The parties had been married for approximately 20 years and had 2 children, a son 19 years of age and a daughter 9 years old. The parties resided at Topinabee, Michigan, where defendant had some cabins, worked as a hunting and fishing guide, and did some work for resorters. His income was approximately $600 per year.

The matter came on for trial on May 15, 1957, at which time only the plaintiff and defendant testified.

Plaintiff stated defendant had become surly and would not talk to her for great periods of time and that such periods of silence would be brought on by money affairs and the support of the children. She further claimed defendant did not take her any place, was neglectful of his family, and would go hunting and fishing whenever he wanted to without taking her or the children with him.

Defendant denied these allegations and stated it was the plaintiff who had refused to talk and that this happened when she had made up her mind to leave. She first left defendant approximately 11 years prior to this trial and ran around with another man for 3 months, after which she returned to defendant. Defendant also stated that he offered to take her places but she would refuse to go with him; that he always provided for her and the family to the best of his ability; and that he was willing for her to come back.

Upon leaving defendant in September, 1956, plain-tiff took residence with her minor daughter in a house trailer owned and occupied by an unmarried man who was the operator of the restaurant in which plaintiff worked as a waitress for her room and board.  Prior to her leaving defendant, she had worked there as a waitress for 75 cents an hour, plus tips.

At the conclusion of the proofs, the court granted plaintiff a divorce, but, for some unexplained reason, no decree was entered until 3 years later, in June of 1960.

In the interim defendant substituted attorneys for his present counsel, who in June, 1958, filed a peti-tion to reopen proofs and allow defendant to present testimony, claiming in said petition and accompany-ing affidavit that defendant, who was not a learned man but a manual laborer all his life, did not under-stand the nature of the proceeding and believed it to be merely another hearing and supposed that the trial would be held at a later date.  Defendant, on July 8, 1959, filed an offer of proofs, listing therein the names of witnesses who would testify and what their testimony would be.  The circuit court refused defendant's petition to reopen and, subsequently, de-fendant filed a petition to introduce testimony and present newly-discovered evidence and attached thereto the affidavits of proposed witnesses.  The court again denied this petition, stating it would take judicial notice of the affidavits and allowed de-fendant to put on a separate record the testimony of the proposed witnesses for the purposes of appeal.

The testimony of these witnesses was to the effect that defendant was a good husband and provided for his family; that he did take his wife to parties and places of amusement; that to all appearances the parties got along well; and that after plaintiff left

defendant she took up residence with an unmarried man.

As previously noted, the only testimony at the trial was that of plaintiff and defendant. Plaintiff's complaints, which were denied by defendant, were that he was silent for long periods of time and neglected her and the children and that the parties didn't get along.

In our opinion this was not sufficient evidence to justify the dismissal of a marriage of 20 years standing. We further note from the evidence at the time of trial that there was uncontradicted testimony of misconduct on the part of plaintiff and a present relationship with an unmarried man which is questionable, to say the least.

In *Bolthuis* v. *Bolthuis,* 233 Mich 584, we made the following observation (pp 586, 587):

" ' As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation, than are people in other relations of life. The marriage status is not merely contractual so as to entitle each of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes.' "

The burden of proof is on the party alleging extreme cruelty. In *Prince* v. *Prince,* 286 Mich 518, we said:

"No benefit to anyone would ensue from a recital in detail of all of the evidence offered in support of plaintiff's case. Briefly, his proofs were intended to show that defendant was of a nagging and quarrelsome nature; that she forced plaintiff to live with her relatives; that she spit at him; that on 2 occasions she threatened to commit suicide; and that sev-

eral times she had thrown various objects at him, including shoes and a pair of scissors.

"Defendant's testimony tended either to refute the various acts relied upon by plaintiff to sustain his case, or to establish that her acts in the particular instances were provoked by plaintiff's conduct.

"Considering the record in its entirety, it is our opinion that plaintiff has failed to sustain the burden of proof in support of his allegations of extreme cruelty."

In *Frey* v. *Frey,* 330 Mich 60, 62, in reversing a decree of divorce, we stated:

"There are certain minimum standards which must be met before a divorce can be granted and we do not find in the record sufficient evidence to sustain these requirements. The trial judge, it is true, had the benefit of listening to the parties before he decided that grounds had been shown. However, while we have examined the record carefully in an attempt to sustain the decree, we cannot allow a divorce on the flimsy grounds shown by this record.

"The decree is reversed and a decree will be entered herein dismissing the bill. No costs."

In view of our holding herein that insufficient evidence was produced at the time of trial to justify the granting of a decree of divorce to plaintiff, we need not decide whether the trial court erred in failing to reopen the proofs to allow defendant to present newly-discovered evidence.

The decree is reversed and the bill of complaint dismissed. Costs to defendant.

DETHMERS, C. J., and CARR, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.