PEOPLE v GILL

1. HOMICIDE—FIRST-DEGREE MURDER—ELEMENTS OF CRIME.

The prosecution must establish, in order to support a conviction of first-degree murder, that the common-law offense of murder was committed, known under Michigan law as second-degree murder, and also that the statutory elements of premeditation and deliberation are present (MCLA 750.316, 750.317).

2. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—CIRCUMSTANTIAL EVIDENCE.

The premeditation that is required for a first-degree murder conviction may be established by inference from circumstantial evidence, but the prosecution must present evidence from which that inference could reasonably be drawn (MCLA 750.316).

3. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION AND DELIBERATION—LAPSE OF TIME.

The prosecution, in a first-degree murder case, must prove beyond a reasonable doubt that there was premeditation and deliberation and such a lapse of time as would give the mind time to calculate the purpose and intent of the killing (MCLA 750.316).

4. HOMICIDE—FIRST-DEGREE MURDER—RELEVANT EVIDENCE.

Evidence in a first-degree murder trial which would be relevant on the issue of whether the actor premeditated and deliberated the killing would include: evidence of a prior relationship

REFERENCES FOR POINTS IN HEADNOTES
[1–8] 40 Am Jur 2d, Homicide §§ 44, 45.
  Homicide: presumption of deliberation or premeditation from the circumstances attending the killing, 96 ALR2d 1435.
[2] 40 Am Jur 2d, Homicide §§ 246, 263.
[3, 5, 8] 40 Am Jur 2d, Homicide § 52.
[4] 40 Am Jur 2d, Homicide §§ 7–12.
[6] 40 Am Jur 2d, Homicide §§ 263–266.
[7] 40 Am Jur 2d, Homicide § 439.
[9] 40 Am Jur 2d, Homicide §§ 542–545.
[10] 40 Am Jur 2d, Homicide § 558.
  58 Am Jur 2d, New Trial § 29 *et seq.*

establishing motive; evidence that the murder weapon was acquired in preparation for the killing; and subsequent conduct by the defendant evincing an overall plan of which the murder was a part.

5. HOMICIDE—FIRST-DEGREE MURDER—MOTIVE—PRECONCEIVED DESIGN.

The premeditation and deliberation required in a first-degree murder case cannot be established by evidence of motive alone without evidence of either activity indicating a preconceived design, or planning activity.

6. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—POSSESSION OF A WEAPON.

It is not reasonable to infer from mere possession of a weapon, without more, that it was carried with the premeditated intent of killing another person.

7. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—THREATS.

Threats made by a defendant charged with first-degree murder are relevant if they indicate cool-headed and dispassionate planning, thus leading to the conclusion that the killing was premeditated; however, threats alone are insufficient to establish premeditation; there must be other supporting evidence.

8. HOMICIDE—FIRST-DEGREE MURDER—PREMEDITATION—TIME FACTOR.

A sequence of events which includes a threat, a fight, and a killing, without any indication of the time interval between the threat and the fight, is as consistent with an unpremeditated killing, following hard on the outset of the argument, as it is with a premeditated killing, resulting after an interval during which there was an opportunity for cool-headed reflection.

9. HOMICIDE—FIRST-DEGREE MURDER—INSUFFICIENT EVIDENCE—COMPROMISE VERDICT.

It is error to submit a case to the jury on a charge of first-degree murder where there is insufficient evidence to support a conviction on that charge, even though the defendant is convicted of second-degree murder, because when the greater charge has been considered by the jury the possibility that the conviction of second-degree murder was a compromise verdict cannot be excluded.

10. HOMICIDE—FIRST-DEGREE MURDER—NEW TRIAL.

Reversal of a second-degree murder conviction, where the defendant was originally charged with first-degree murder, requires a

new trial on second-degree murder only since the defendant
has already been acquitted of first-degree murder.

Appeal from Jackson, Gordon W. Britten, J
Submitted Division 2 February 8, 1972, at Lansing
(Docket No. 9687.) Decided November 27, 1972.
Leave to appeal denied, 389 Mich 785.

Albert Gill was convicted of second-degree mur-
der. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Bruce A. Barton,*
Prosecuting Attorney, and *Paula Hosick,* Chief
Appellate Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender,
and *James R. Neuhard,* Assistant Defender, for
defendant.

Before: McGregor, P. J., and Levin and Tar-
gonski,* JJ.

Levin, J. The defendant, Albert Gill, was tried
before a jury on a charge of first-degree murder.[1]
The jury returned a verdict of guilty of second-
degree murder. We reverse because there was
insufficient evidence of premeditation and delibera-
tion and it was, therefore, prejudicial error to
submit the charge of first-degree murder to the
jury.

Gill was convicted of murdering Alford Jones.
Gill and Jones were prisoners in Jackson State
Prison.

The testimony of another prisoner, Ralph Kno-
pek, was that the victim Jones had been his "pro-
tector". Knopek testified that on the day of the

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] MCLA 750.316; MSA 28.548.

murder, November 24, 1969, Gill was pressing him for homosexual purposes and became engaged in an argument with Jones. Knopek further testified that Gill told Jones, "if you don't leave here, let me talk to the boy * * * I will cut you off the gallery". And that Gill told Knopek, "if [Knopek] didn't do what [Gill] wanted [him] to do, that he'd see that there was great bodily harm done to [Knopek]. * * * Plus be great bodily harm to Al Jones".

Robert Cottee, another prisoner, testified that he was in the same cell block with Gill and Jones, and that he heard an unusual noise[2] from a tier of cells above him, and moved to a position where he was able to see Gill and Jones fighting near a staircase two tiers[3] of cells above him. Gill's back was to the stair rail and Jones stood with his hands grasping the rail on either side of Gill. Cottee then observed a dull-colored instrument in Gill's hand, and saw Gill strike Jones with it twice. Jones fell to the floor with Gill on top of him. Gill then arose and went to his cell, and later transferred a small package to other inmates.

There were four stab wounds, including one which pierced the heart and caused Jones' death.

Cottee's testimony was manifestly sufficient to establish that Gill killed Jones, and to support a verdict convicting Gill of the common-law offense of murder—known under our law as second-degree murder. See *People v Morrin,* 31 Mich App 301, 315 (1971).

In order to convict Gill of the more aggravated offense of first-degree murder, the people were obliged to establish the additional statutory ele-

---

[2] The witness described the sound that attracted his attention as being "a sound of a body or bodies thumping against a rail, steel rail".

[3] Sometimes called "galleries".

ments of premeditation and deliberation.[4] Recently, in *People v Morrin, supra,* pp 324–334, we discussed at some length the history and underlying rationale of the premeditation and deliberation requirement. We said, p 329: "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem". We also said that, while premeditation may be established by inference from circumstantial evidence, the people must present evidence from which that inference could reasonably be drawn.[5]

A short time later, in *People v Banks,* 37 Mich App 280, 281 (1971), we said, "the prosecution must prove beyond a reasonable doubt that there was premeditation and deliberation and such a lapse of time as would give the mind time to calculate the purpose and intent of the killing".

In *Morrin,* we also considered the type of evidence which would be relevant on the issue of whether the actor premeditated and deliberated the killing. We mentioned evidence of a prior relationship establishing motive; evidence that the murder weapon was acquired in preparation for the killing; and subsequent conduct by the defendant evincing an overall plan of which the murder was a part.[6]

The California Supreme Court, in *People v Anderson,* 70 Cal 2d 15, 26–27; 73 Cal Rptr 550, 557; 447 P2d 942, 949 (1968), provided a helpful analysis of the evidentiary requirements:

---

[4] The statute reads in part:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, * * * shall be murder of the first degree". MCLA 750.316; MSA 28.548.

[5] *People v Morrin,* 31 Mich App 301, 328–331 (1971).

[6] *People v Morrin, supra,* pp 331–334.

"The type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, * * * (3) facts about the nature of the killing from which the jury could infer that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2).

"Analysis of the cases will show that this court sustains verdicts of first-degree murder typically when there is evidence of all three types and otherwise requires at least extremely strong evidence of (1) or evidence of (2) in conjunction with either (1) or (3)." (Emphasis by the Court.)

It will be observed that category (3), activity indicating a "preconceived design", and category (1), planning activity, are analytically much the same; and that evidence of motive, category (2), without evidence of either activity indicating a preconceived design or planning activity is not enough.

In this case the people have established a motive —homosexual rivalry. But there is no evidence either of planning activity or of an opportunity for cool-headed reflection.

The various judicial elucidations of the statutory standard seek to differentiate those killings committed in the heat of passion from killings committed dispassionately after opportunity for reflec-

tion.[7] Careful judicial appraisal of the evidence alongside the statutory standard guards against the temptation to impose individual conceptions of the degree of guilt in a particular case upon the statutory standard. The apparent savagery of the attack or any number of other factors may appear to some persons to evince the highest degree of moral culpability. The Legislature, however, has chosen to distinguish degrees of culpability based on the presence or absence of premeditation and deliberation, and it is that standard which we must enforce.

The killing in this case appears to have been the culmination of an argument and fight between Gill and Jones. The position of the two men when seen by Cottee, and the noise which originally attracted his attention, suggest that Jones, not Gill, had the upper hand in the struggle until Gill produced a weapon. Gill's delay in producing a weapon until he found himself losing the fight suggests that he did not intend in all events to use the weapon he apparently was carrying on his person—that his purpose at the outset of the fight was not to kill Jones.

Possession of a weapon is equivocal. The evidence would not support an inference that Gill pocketed the weapon after he uttered the threat attributed to him by Knopek. It is not reasonable to infer from mere possession of a weapon, without more, that it was pocketed with the premeditated intent of killing another person. See *Nye v People*, 35 Mich 16, 17–18 (1876), where the Michigan Supreme Court reversed a conviction of first-de-

---

[7] "It was rightly considered that what is done against life deliberately indicates a much more depraved character and purpose than what is done hastily or without contrivance." *Nye v People*, 35 Mich 16, 19 (1876). The distinction is recognized in the vernacular—a "cold-blooded" killing.

gree murder in a case where the defendant killed the victim with a knife "which he had in his pocket, and which was apparently one calculated to be used as a weapon". There is no evidence that Gill acquired the weapon in a cool state of blood in preparation for homicide.[8]

The only evidence from which the element of premeditation could possibly be inferred is the testimony of Knopek concerning threats made by Gill. Threats are relevant if they form a link in a chain of evidence leading to the conclusion that the killing was premeditated. More specifically, threats are relevant if they indicate planning. However, planning, to be relevant, must be cool-headed and dispassionate. Otherwise it fails to evince the quality of cool, dispassionate thought which is premeditation. To state it conversely, a plan conceived and executed in hot blood is not a plan "premeditated and deliberated" upon as those words are used in this statute. As the Michigan Supreme Court has said, "it is a perversion of terms to apply the term deliberate to any act which is done on a sudden impulse". *Nye v People, supra,* p 18.

We question initially whether general threats such as those attributed to Gill are reliable evidence of planning activity. The distrust of hot words, which may spring easily to the lips of any of us, without any deep malevolent intent, is ingrained in the law. As an example, it is the general rule that threats by the victim are insuffi-

---

[8] See *People v Morrin, supra,* pp 331–332; *Austin v United States,* 127 US App DC 180, 190; 382 F2d 129, 139 (1967).

Cottee described the weapon wielded by Gill as "an instrument * * * maybe six to eight inches long * * * it was a dull, dullness in color". The murder weapon was not found. A state police detective testified that Jones' wounds "appeared to be knife wounds", but the pathologist, who performed an autopsy, specifically refused to categorize the wounds as having been made by a knife.

cient to establish the degree of provocation necessary to reduce an intentional killing from the crime of murder to the crime of manslaughter.[9] Nor are the victim's threats enough to justify the killing in terms of self-defense. "The fact that a dangerous man has threatened to kill another on sight, and that the other has heard of the threat, or mere verbal threats at the time, will not justify him in taking his enemy's life, unless there is some overt act indicating a purpose to immediately put the threat into execution."[10] This is not to say that threats are not relevant, it is to say that threats alone do not make out a case of premeditation. There must be other supporting evidence.

Focusing on the facts of this case, the sequence of events establishes a threat, a fight, and a killing. What is missing is the time factor[11] between the threat and the fight and any showing that there was an opportunity for cool-headed reflection on Gill's part. Without such evidence, the sequence of events is as consistent with an unpremeditated killing—following hard on the outset of the argument—as it is with a premeditated killing after an

[9] Perkins, Criminal Law (2d ed), p 57; 40 CJS, Homicide, § 47, p 909; 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1665, pp 2008–2009.

[10] Clark & Marshall, Crimes (7th ed), § 7.03, p 483; 40 CJS, Homicide, § 126(3), p 1009.

[11] The time element in this case was poorly established at trial, with relatively few questions directed toward the witnesses. It appears that the threat was followed in relatively short order by the killing.

Knopek indicated that the argument took place between 3:40 p.m. and 4 p.m. The testimony of inmates Maxwell and Bussel seemed to establish that Jones died from his wounds between 4:30 p.m. and 4:45 p.m. Dr. Bartholic pronounced Jones dead in the prison hospital at 4:50 p.m. Cottee, the only witness who observed the fight, was not questioned about the time element. There is no way of knowing when the struggle between Gill and Jones began, and, most importantly, how soon after the threat the struggle began.

interval during which there was an opportunity for cool-headed reflection.

The error in submitting the case to the jury on a charge of first-degree murder was prejudicial and requires a new trial even though the defendant was convicted of second-degree murder. Where the greater charge has been considered by the jury, the possibility that the conviction of second-degree murder was a compromise verdict cannot be excluded. *People v Stahl,* 234 Mich 569, 572 (1926); *People v Marshall,* 366 Mich 498, 501 (1962); *People v Hansen,* 368 Mich 344, 353 (1962); *cf. People v Morrin, supra,* p 337.

Because of our disposition of this issue and the nature of the remaining claims of error, there is no need to consider those claims.

Reversed and remanded for a new trial on a charge of second-degree murder, Gill having been acquitted by the jury's verdict of the charge of first-degree murder.[12]

All concurred

---

[12] See *People v Farrell,* 146 Mich 264 (1906); *People v Gessinger,* 238 Mich 625 (1927); *People v Deneweth,* 14 Mich App 604 (1968); *People v White,* 15 Mich App 527 (1969); *Green v United States,* 355 US 184; 78 S Ct 221; 2 L Ed 2d 199 (1957).