PEOPLE v WATKINS

DECISION OF THE COURT

1. APPEAL AND ERROR—EQUALLY DIVIDED COURT.
   Decision of the Court of Appeals affirming a conviction of second-degree murder is affirmed by an equally divided court.

OPINION FOR REVERSAL

T. M. KAVANAGH, C. J., and SWAINSON, J.

2. HOMICIDE—KNIFE—PREMEDITATION—DELIBERATION—EVIDENCE.
   *The fact that defendant killed the deceased with a butcher knife in itself is not evidence of premeditation or even deliberation where there was only one knife wound (MCLA 750.316).*

3. HOMICIDE—EVIDENCE—PREMEDITATION.
   *Statement of defendant that he would kill the deceased if that person was not removed from the premises, made several seconds before the killing, was not evidence of premeditation (MCLA 750.316).*

4. HOMICIDE—EVIDENCE—PREMEDITATION.
   *Statement of a witness, that defendant told another person to come and get the victim "before I kill him", is equivocal and is clearly not evidence of premeditation because, if anything, the statement would appear to indicate an unwillingness to harm the victim and a desire by defendant for the aid of the person to whom the statement was made in preventing a killing (MCLA 750.316).*

5. HOMICIDE—FIRST-DEGREE MURDER—SECOND-DEGREE MURDER—EVIDENCE—COMPROMISE VERDICT—NEW TRIAL.
   *Judgment of second-degree murder should be reversed and the*

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 902.
[2–4] 40 Am Jur 2d, Homicide §§ 266, 439.
[5–7] 40 Am Jur 2d, Homicide § 526.
[8–10] 40 Am Jur 2d, Homicide § 316.
[11] 40 Am Jur 2d, Homicide § 467 *et seq.*

case remanded for a new trial because there may have been a compromise verdict where the evidence was insufficient to sustain a judgment of first-degree murder, the defendant was entitled to a directed verdict on the charge of first-degree murder, and the trial court erred in failing to grant defendant's motion, made at the conclusion of the people's proofs, to dismiss the charge of first-degree murder on the ground that there was insufficient evidence to support the charge (MCLA 750.316, 750.317).

### Opinion Concurring in Reversal

#### T. G. Kavanagh, J.

6. Homicide—First-Degree Murder—Evidence—Jury.

Had the jury returned a verdict of first-degree murder on the evidence contained in the record, the Michigan Supreme Court would have no choice but to set it aside as wholly unsupported; therefore, the jury should not have been obliged to consider a charge of first-degree murder on such evidence.

7. Homicide—First-Degree Murder—Dismissal and Nonsuit—Evidence.

The test a trial judge should have used in ruling on a motion to dismiss a charge of first-degree murder is whether such a verdict would have to be set aside as wholly unsupported by the evidence.

### Opinion for Affirmance

#### Adams, T. E. Brennan, and Williams, JJ.

8. Homicide—Evidence—Equivocal Statement—Premeditation—Jury Question—Appeal and Error.

Statement of a witness that defendant told another person that he had "better come and get this mother fucker before I kill him", is capable of two or more meanings if it is equivocal and it hardly follows that an equivocal statement can be "clearly not evidence of premeditation"; it is for the jury to determine the intended meaning of an equivocal statement and the only way an appellate court can conclude that an equivocal statement is not evidence is to demonstrate that none of its possible interpretations would support the conclusion claimed.

9. Homicide—Pejorative—Words and Phrases—Premeditation—Evidence—Jury Question.

The word pejorative is an adjective meaning disparaging; it is descriptive of the tone, meaning, or intention with which words

*are used; discussion and analysis of the intention with which
words are used in a murder case is the function of the jury;
therefore, a phrase used by defendant to another person that
he had "better come and get this mother fucker before I kill
him" was for the jury and the Michigan Supreme Court cannot
or indeed has not ruled out the possibility that the words could
have conveyed animosity, could have been used in a pejorative
sense, or could have evidenced premeditation.*

10. HOMICIDE—PREMEDITATION—EVIDENCE.

*Evidence of premeditation was in the trial record where defend-
ant testified that he went to the kitchen and picked up the
knife which ultimately became the murder weapon and the
victim was in the living room because it was at least a possibil-
ity that the jury could have concluded that defendant's move-
ments were consistent with a pre-formed intention to inflict the
injury which resulted in the victim's death.*

11. HOMICIDE—EVIDENCE—WITNESSES—CREDIBILITY—JURY QUESTION.

*Defendant's initial story concerning an unidentified intruder and
his later recanting that story was an element proper for the
jury's consideration; moreover, the jury was entitled to consider
the reasonableness and credibility of defendant's account of a
homicide.*

Appeal from Court of Appeals, Division 3, R. B.
Burns, P. J., and Holbrook and Levin, JJ., affirm-
ing Muskegon, Charles A. Larnard, J. Submitted
November 9, 1972. (No. 4 November Term 1972,
Docket No. 53,786.) Decided December 21, 1972.

36 Mich App 380 affirmed by an equally divided
Court.

DeShorn Watkins was convicted of second-degree
murder. Defendant appealed to the Court of Ap-
peals. Affirmed. Defendant appeals. Affirmed by an
equally divided Court.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Paul M. Ladas,*
Prosecuting Attorney, and *Lawrence R. Backofen,*
Assistant Prosecuting Attorney, for the people.

*Carl S. Krueger,* for defendant on appeal.

SWAINSON, J. *(for reversal).* On the evening of December 31, 1969, DeShorn Watkins, the defendant, Crawford Crowell, and Dora Kirks were at the home of Cora Williams, a sister of Dora Kirks. They engaged in some drinking and discussion and left the house late that evening or early on the morning of January the first. DeShorn Watkins, Crawford Crowell, and Dora Kirks agreed to go to DeShorn's apartment. While walking to the apartment, they met Arnold Penn and Larry Kirk. Larry Kirk, the deceased, was a first cousin of Dora Kirks. Arnold Penn and Larry Kirk joined the others and proceeded to the defendant's apartment.

When they arrived at the apartment defendant put on a record player. There was continued drinking and general conversation. Dora Kirks danced with Larry Kirk. There was no animosity shown between any of the individuals involved. Larry asked the defendant to show him karate. Defendant proceeded to do so and they engaged in general horseplay. The parties continued to play records and talk and drink for between two and three hours. Arnold Penn fell asleep on the couch. Sometime in the early morning hours, Crawford Crowell and Dora Kirks went into one of the bedrooms and engaged in sexual intercourse. At the time they entered the bedroom, Larry and the defendant were in the bathroom laughing and talking. Precisely what happened thereafter is a matter of dispute.

Dora Kirks testified that when she was in the bedroom she heard Larry and DeShorn laughing and talking but could not make out what they were saying. She stated that the door was not

completely closed. She testified that while she was still engaged in sexual intercourse the defendant came into the room and informed Crawford Crowell "you'd better come and get this mother fucker before I kill him." Defendant then left and came back and said he had cut or stabbed Larry. She testified that the interval between the first and second statements was a matter of seconds. At that point Crawford Crowell left the bedroom and she followed. She went into the living room and saw Larry slumped on the couch. Defendant put Larry in Arnold Penn's lap. Dora Kirks informed them that she was going to faint and was told that she could leave. She then did so.

Crawford Crowell testified that he closed the door when he entered the bedroom with Dora. He testified that they were in the room 15 to 20 minutes. They had not completed the act of sexual intercourse when defendant entered the room. He denied hearing the statement that Dora said the defendant made. His version was that defendant came into the room and stated "Larry has been cut," or "Larry has been stabbed." In response to a question he stated that he could not remember word for word what defendant said but that the essence of the statement was that Larry Kirk had been cut or stabbed. Crowell testified that after an interval of a few seconds, defendant came back and stated "Hey, man, I ain't playing, come on the guy is hurt." He then put on his pants and went into the living room. Defendant told him that a guy came up the stairs and started fighting with Larry. Crawford Crowell called an ambulance and was informed that it was on its way. He then went downstairs to meet it. Defendant testified that he was out of the living room and returned and found Larry with a knife. When he asked Kirk to put it down, Kirk challenged him to take it from him.

Defendant returned to the kitchen, picked up a butcher knife and returned with the knife pointed toward the deceased. He told the deceased to give him the knife and Larry Kirk lunged at him and was impaled on the knife held by the defendant.

At the conclusion of the people's proofs defendant made a motion for dismissal of the charge of first-degree murder.[1] A jury found defendant guilty of second-degree murder.[2] The Court of Appeals affirmed with Judge LEVIN dissenting. 36 Mich App 380. We granted leave to appeal. 386 Mich 782.

Both parties agree that the single issue raised on appeal is whether the trial court erred in failing to grant a motion by defendant to dismiss the charge of first-degree murder on the ground there was insufficient evidence to support the charge?

We are dealing here with a very narrow issue involving submission of a charge of first-degree murder to the jury. Thus, we must determine that if taking the evidence in the light most favorable to the state there was any evidence upon which a jury could predicate a finding of guilty of murder in the first-degree. After a careful review of the transcript in this case, we are unable to find any evidence of premeditation.

The majority opinion of the Court of Appeals cited *People v Lem Dumas,* 25 Mich App 173 (1970) which cited two of our cases, *People v Wolf,* 95 Mich 625 (1893) and *People v Bauman,* 332 Mich 198 (1952).

In *Wolf,* the Court stated (p 629):

"The learned counsel for the respondent contends

---

[1] MCLA 750.316; MSA 25.548.
[2] MCLA 750.317; MSA 25.549.

that there was no evidence to sustain the verdict, because there was no proof of previous deliberation or premeditation. This would result in holding that deliberation and premeditation cannot be inferred from the character of the weapon used, the wounds inflicted upon vital parts, the circumstances surrounding the killing, the acts, conduct, and language of the accused before and after the killing, and the improbability of the story told by him. * * * If the accused committed the deed, the facts were sufficient to justify the verdict."

That statement is correct under the facts of that case, but is factually distinguishable from the present situation. The defendant in the *Wolf* case was convicted of a brutal murder. The Court properly held that those facts surrounding the murder were evidence of deliberation and premeditation. See 95 Mich 627–628 for a detailing of the wounds that were inflicted upon the deceased. Here, it is conceded that there was only one wound made by a knife and this in itself is not evidence of premeditation or even deliberation. *Bauman* cites the *Wolf* case for the above quoted proposition but the Court held it was proper to submit a first-degree murder charge based on the direct evidence of the psychiatrist that the murder was premeditated. Hence, these cases are distinguishable on their facts and the fact that the defendant herein killed the deceased with a butcher knife is not evidence of premeditation.

The Court of Appeals' opinion cites testimony of both Dora Kirks and Crawford Crowell and concludes (36 Mich App 380, 388–389 [1971]):

"We rule that the testimony produced at trial would justify a finding by the jury that defendant deliberately formed in his mind beforehand the intent to kill the deceased. As a result of this determination, we are constrained to rule, viewing the evidence in the light most favorable to the people, that the jury could also

have determined that sufficient time had elapsed be-
tween the time defendant deliberately formed in his
mind the intent to kill the deceased and the act of
stabbing the deceased which caused his death, to justify
a finding of premeditation."

However, the Court fails to state precisely what
the evidence is. A portion of the testimony of Dora
Kirks cited by the Court is as follows (36 Mich
App 386–387):

" '*Q.* Now, just answer my questions, if you will,
please. He went out of the room?
    " '*A.* Yes.
    " '*Q.* And how long before he came back in again?
    " '*A.* It wasn't that long.
    " '*Q.* How long was it?
    " '*A.* Just a few minutes. He just went back out and
he came back in again.' "

Thus, the Court of Appeals may have inferred
that there was a lapse of several minutes which
was sufficient time to form premeditation. How-
ever, the transcript reads as follows:

"*A.* Now, just answer my questions, if you will,
please. He went out of the room?
    "*A.* Yes.
    "*Q.* And how long before he came back in again?
    "*A.* It wasn't that long.
    "*Q.* How long was it?
    "*A.* Just a few minutes. He just went back out and he
came back in again.
    "*Q.* Was it a matter of seconds or a matter of min-
utes?
    "*A.* SECONDS. (Emphasis added.)
    "*Q.* Seconds?
    "*A.* Yes.
    "*Q.* So that it was just time enough for him to go
back in the living room for a few seconds, and then
return?

"*A.* Yes."

Thus, it is clear that Dora Kirks never really meant that there was a lapse of a few minutes. Indeed, the prosecutor states in his brief:

"In the instant case the trial judge had to decide whether a jury could have reasonably believed from the evidence that DeShorn Watkins had fatally stabbed Larry Kirks *several seconds* after stating that he would kill the 'mother fucker' if he was not removed from the premises." (Emphasis added.)

Thus, the above quoted passage by the Court of Appeals was not evidence of premeditation.

The Court of Appeals also points out that Crawford Crowell's testimony when first interrogated and at trial were not the same.[3]

This is true, but it is clearly not evidence of premeditation on the part of the defendant.

Thus, the only possible evidence of premeditation is the one statement of Dora Kirks, "I heard him after he came in there, and he told Crawford Crowell, he said, 'you'd better come and get this

---

[3] Crawford Crowell explained the variance at the trial as follows:

"*Q.* Do you recall him asking you, whether you were able to hear anything while you were in the bedroom?

"*A.* No, because when he first asked me, I told him that I was sitting in the chair sleeping. And the only reason I said that I was sitting in the chair sleeping, was because I didn't want them to know that Dora Kirks was upstairs.

"*Q.* So you changed your story?

"*A.* What?

"*Q.* So you changed your story?

"*A.* I changed my story.

"*Q.* The story you are telling here today, isn't the story you originally told?

"*A.* Well, at first I didn't want them to know she was there and in the bedroom with me. And that she had left before anybody had come, and at that time I didn't know he was dead. I thought he was just cut or something, but after I found out he was dead, that is when I told them the truth, that she was in the bedroom with me."

mother fucker before I kill him.' " The prosecutor
in the above quoted portion of the brief likewise
asserts that this statement was sufficient to show
premeditation. We agree with the dissent that this
statement is equivocal and is clearly not evidence
of premeditation. As Judge LEVIN stated (36 Mich
App 396 [1971]):

"That statement, attributed by Dora Kirks to Wat-
kins, does not evidence an intention, both premeditated
and deliberated upon, to kill Larry Kirk. If anything,
the statement would appear to indicate an unwilling-
ness to harm Kirk and a desire by Watkins for Cro-
well's aid in preventing a killing.

"The language used by Watkins in referring to Larry
Kirk does not necessarily indicate animosity. The term
'motherfucker' is used by some men in their everyday
speech. Just as it cannot be taken as a literal comment
on Larry Kirk's sexual practices, it does not appear to
have been used in a pejorative sense."

Thus, the evidence was insufficient to sustain a
judgment of first-degree murder and defendant
was entitled to a directed verdict on the charge of
first-degree murder.

In *People v Stahl*, 234 Mich 569 (1926) defend-
ant was charged with first-degree murder and
found guilty of manslaughter. The Supreme Court
reversed for a new trial holding that there was no
evidence of premeditation. The Court stated (p
572):

"But it is urged that defendant was not prejudiced in
this respect because the jury acquitted him of the major
charge of murder, the verdict being of manslaughter;
citing *People v. Knapp,* 26 Mich. 112 [1872]; *People v.
Sharp,* 163 Mich. 79 [1910]; *People v. Lieska,* 161 Mich.
630 [1910]; *People v. Klise,* 166 Mich. 1 [1911]; *People v.
Collins,* 166 Mich. 4 [1911]. These cases are applicable
where there is some evidence at least to support the

charge, or degrees of crime charged and submitted to
the jury. But they ought not to be held as excusing the
instruction here respecting the major charge of murder
where there is no evidence to support it. Fancied cases
to illustrate the point will suggest themselves.

"When twelve jurors agree on amount or degree
generally there must be composition of views. Here the
jurors to determine degree were required improperly to
compose their views between the major charge of mur-
der in its degrees, and manslaughter. Defendant testi-
fied; if truly, he was innocent. The case was serious,
sad. If the murder feature had been omitted from the
instructions, and the case submitted on the theory of
manslaughter, it cannot now be said with certainty that
the jury would have reached the same result."

In *People v Marshall,* 366 Mich 498 (1962),
another case where defendant was charged with
first-degree murder and convicted of manslaugh-
ter, Justice KELLY, writing for a unanimous Court,
quoted the *Stahl* case and reversed and remanded
for a new trial because there was no evidence of
premeditation.

In *People v Gessinger,* 238 Mich 625 (1927) the
majority stated (p 628):

"If the trial court was in error as to this question,
was the defendant harmed by the ruling, inasmuch as
he was convicted the second time for receiving stolen
property? I think it is evident to most practitioners of
experience that it would be much easier to secure an
acquittal if the defendant were only charged with the
lesser offense than it would be were he charged with all
three offenses. The tendency of jurors is to compromise
their differences. Where there is only one charge they
are obliged to meet the question squarely by yes or no,
or disagree, but where the charges are three, the juror
who thinks there should be no conviction, and the juror
who thinks that a conviction should be had of the
greater offense are quite liable to agree upon a convic-
tion of the lesser offense."

See also: *People v Hansen,* 368 Mich 344, 353 (1962).

Thus, that there may have been a compromise verdict, the judgment must be reversed.

The judgment is reversed and the case is remanded for a new trial.

T. M. Kavanagh, C. J., concurred with Swainson, J.

T. G. Kavanagh, J. *(concurring in reversal).* I concur with my Brother Swainson, because I am persuaded that had the jury returned a verdict of first-degree murder on the evidence contained in this record, we would have no choice but to set it aside as wholly unsupported.

This I believe is the test the trial judge should have used in ruling on the motion to dismiss the charge of first-degree murder.

I can take no solace (as my Brother T. E. Brennan apparently does) from the fact that this jury returned a verdict of second-degree murder. They should not have been obliged to consider a charge of first-degree murder on such evidence.

T. E. Brennan, J. *(for affirmance).* The defendant was convicted of second-degree murder. The issue before us is whether there was any evidence introduced at the trial from which the jury could have concluded that the defendant was guilty of first-degree murder.

In my view, the dissenting opinion in the Court of Appeals and the majority opinion in this Court both proceed to analyze and weigh the evidence of premeditation. They conclude that there was no evidence of premeditation but they arrive at that conclusion only by showing why the evidence of premeditation should not have been believed.

My Brother refers to the statement "you'd better come and get this mother fucker before I kill him" as an equivocal statement. If it is equivocal, then it is capable of two or more meanings or interpretations, and it hardly follows that an equivocal statement can be "clearly not evidence of premeditation." It is for the jury to determine the intended meaning of an equivocal statement. The only way an appellate court can conclude that an equivocal statement is not evidence is to demonstrate that none of its possible interpretations would support the conclusion claimed.

The dissent in the Court below analyzing the crucial statement emphasizes its equivocal nature. Thus, "[i]f anything, the statement *would appear to indicate* an unwillingness to harm Kirk * * * ." And, further, "[t]he language used by Watkins in referring to Larry Kirk does not *necessarily* indicate animosity. The term 'motherfucker' is used by *some* men in their everyday speech. * * * *it does not appear to have been used in a pejorative sense."* The word pejorative is an adjective meaning disparaging. It is descriptive of the tone, meaning, or intention with which words are used. Discussion and analysis of the intention with which words are used in a murder case is the function of the jury.

In my opinion, the meaning of the phrase used was for the jury and I do not believe that this Court can or indeed has ruled out the possibility that the words could have conveyed animosity, could have been used in a pejorative sense, or could have evidenced premeditation.

Further, it appears that other evidence of premeditation was in the trial record. This included the testimony of the defendant to the effect that he went to the kitchen and picked up the knife

which ultimately became the murder weapon. The victim was in the living room, according to the defendant, and it was at least a possibility that the jury could have concluded that the defendant's movements were consistent with a pre-formed intention to inflict the injury which resulted in the death of Kirk.

Still another element, proper for the jury's consideration, was the defendant's initial story concerning the unidentified intruder and his later recanting of that story. Moreover, the jury was entitled to consider the reasonableness and credibility of the defendant's account of the homicide.

In this analysis, I have tried to avoid expressing a conclusion upon the evidence. Indeed, the totality of the evidence suggests that the jury's verdict was eminently correct, and the analysis of the majority, as well as the dissent below, came to the same conclusion. But I perceive it to be a mischief that an appellate court should reverse a proper verdict for the very reason that it agrees with the jurors.

ADAMS and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.

BLACK, J., did not sit in this case.