PEOPLE v YARBOROUGH

1. WITNESSES—CRIMINAL LAW—RES GESTAE WITNESSES—DUE DILI-
GENCE—PRESUMPTIONS—JURY QUESTION.

The question whether the prosecution has used due diligence to attempt to produce a res gestae witness may be determined by the trial judge or it may be submitted to the jury with the instruction that if due diligence was not exercised, it is presumed the testimony of the absent witness would have been unfavorable to the prosecution; however, there must be sufficient evidence in the record to support a finding of due diligence in order to justify sending the question to the jury.

2. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—DUE DILI-
GENCE—JURY—EVIDENCE.

The question whether the prosecution has used due diligence to attempt to produce a res gestae witness was properly submitted to the jury where the evidence showed that police left a subpoena at the witness's last known address, and after finding the address vacant and the witness's phone disconnected when he failed to appear at trial, checked with the witness's last employer, the postal inspector, and the utility company, checked outstanding traffic warrants for an address for the witness, and searched other addresses.

3. CRIMINAL LAW—PROSECUTOR—BELIEF IN DEFENDANT'S GUILT—EVI-
DENCE.

A prosecutor may state his belief in the guilt of a defendant if he indicates that the belief is based upon the evidence and he does not try to buttress his argument solely by the force of his office or of his personality.

Appeal from Recorder's Court of Detroit, Clarence Laster, Jr., J. Submitted Division 1 March 14, 1975, at Detroit. (Docket No. 19665.) Decided May 28, 1975.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Witnesses § 633.

[3] 63 Am Jur 2d, Prosecuting Attorney § 27.

Anthony Yarborough was convicted of manslaughter. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Steven Rabinovitz,* Assistant Prosecuting Attorney, for the people.

*Stone, Richardson, Grier, Allen, Glenn & Johnson,* for defendant.

Before: LESINSKI, C. J., and V. J. BRENNAN and BASHARA, JJ.

LESINSKI, C. J. Defendant, Anthony Yarborough, was charged with second-degree murder. MCLA 750.317; MSA 28.549. A jury in Detroit Recorder's Court found the defendant guilty of the lesser included offense of manslaughter. MCLA 750.321; MSA 28.553. He was sentenced to a prison term of from 10 to 15 years. He appeals as of right.

The information charged that the defendant murdered the two-year-old Michelle Test by pouring gasoline over her and lighting it. The offense occurred in the home of the deceased child's parents, Robert and Paulette Test. During the morning of May 9, 1973, Robert Test was painting his living room in the company of several friends, Sherry Lynn Johnson, Dannie Brown, John Henry Harris, and the defendant. All those present in the house were taking one or more of a variety of drugs including heroin, marijuana and pills. Although the testimony of the witnesses was conflicting at many points, they generally agreed that the defendant poured gasoline over the little girl, that a fight between Robert Test and the defendant

ensued, that defendant was holding a pack of matches in his hand, and that the girl then burst into flames. Test stated that the defendant came after him with a lighted match and threw it at his daughter. The defendant denied having poured gasoline on the girl or having held a burning match. Sherry Johnson testified that she had not seen anyone throw a match, but in a statement she had given the police the day of the incident, she said that the defendant held a lighted match in his hand. John Henry Harris was not present at trial.

On appeal, defendant claims that the prosecution failed to exercise due diligence in its attempts to produce John Henry Harris at trial, and that the failure to produce a res gestae witness requires us to grant a new trial.

John Henry Harris was indorsed on the information and the prosecution was under a duty to produce him to testify at trial. On the first day of trial, however, the police could not locate the witness and were unable to find him before the trial ended. The question thus became whether the prosecution had exercised due diligence in its attempts to discharge its duty to produce the witness. The trial judge submitted this question to the jury:

"It is the duty of the People to produce all of the available eyewitnesses or exclude *[sic]* nonproduction in the proper way. It is the duty of the People to produce witnesses whose names were endorsed on the Information. A certain witness was not produced. There has been testimony offered of an effort to locate that witness with a subpoena for the purpose of bringing him into court and putting him on the stand in order that you might hear his story. Now, if that was a reasonable effort, if the Prosecutor has shown reasonable pain to find that witness and bring him here, then that duty

has been discharged. If the Prosecutor has not used due diligence and failed to produce testimony that would be material and assist in unravelling this charge, then that duty has not been discharged. That is a matter that is fair and right for the jurors to take into consideration in determining the outcome of the case.

"As I said before, it is the duty of the Prosecutor to summon all witness—eyewitnesses to the crime. If the prosecutor fails to do so and in a sense such witnesses not satisfactorily explained or excused, you as jurors are at liberty to draw inferences that if such a witness was produced his testimony would be unfavorable to the People's case. The witness I am speaking of is John Henry Harris."

This Court has held that a trial judge may determine the question of due diligence or may submit the issue to the jury with the instruction that the jury should presume the testimony of the absent witness to be unfavorable to the prosecution if due diligence was not exercised. *People v Dixon,* 46 Mich App 754; 208 NW2d 535 (1973), *People v Ivy,* 11 Mich App 427; 161 NW2d 403 (1968), *People v Kern,* 6 Mich App 406; 149 NW2d 216 (1967). See *People v Serra,* 301 Mich 124; 3 NW2d 35 (1942). In order to justify sending the question to the jury, however, there must be sufficient evidence in the record to support a finding of due diligence. See *People v Eugene Harris,* 43 Mich App 531; 204 NW2d 549 (1972), *People v Herman Brown,* 38 Mich App 69; 195 NW2d 806 (1972). The judge should not send the issue of due diligence to the jury if it could be said as a matter of law that the prosecution did not exercise due diligence.

The evidence indicated that two weeks before a police officer had delivered a subpoena to the witness' supposed address and left the subpoena in the mailbox. Police assumed the subpoena had

been delivered. When the witness did not appear on the first day of trial, the police conducted extensive efforts to find him. The investigating officers found that his last address was vacant and that the phone had been disconnected. They checked with the witness' last known employer, with the postal inspector, and with Detroit Edison, none of whom had the witness' forwarding address. A check of outstanding traffic warrants produced a prior address where the witness had not lived for three years. Searching other addresses, the police did discover a John Henry Harris, age 78, clearly not the witness. In addition, they found a recent warrant for the arrest of John Henry Harris for armed robbery listing yet another address for him. A final check of that address and his last known address still produced no evidence of the witness.

We find that the enumerated attempts to produce the witness constituted sufficient evidence of due diligence to send that issue to the jury. The efforts by the prosecution here surpassed the efforts to produce res gestae witnesses in other cases where our Court has found evidence of due diligence insufficient. See *People v Eugene Harris, supra, People v Herman Brown, supra.* In *Harris,* for example, the police merely inquired at the Wayne County Jail and with the police identification bureau and searched no further; the prosecution's efforts here exceeded that. We also find that the attempts to find the witness in this case were more extensive than those in many cases where we have affirmed a trial court's finding of due diligence. See *People v Bersine,* 48 Mich App 295; 210 NW2d 501 (1973), *People v Hairston,* 37 Mich App 65; 194 NW2d 504 (1971), *People v Riley,* 33 Mich App 721; 190 NW2d 569 (1971). By compari-

son with our earlier cases, therefore, it appears proper for the trial judge to have sent the issue of due diligence to the jury.

Furthermore, we note that at the time when the missing res gestae witness was being sought there was an outstanding warrant for his arrest on an unrelated armed robbery charge. At the time of trial, therefore, the witness was a fugitive from justice.

Finally, defendant argues that the prosecutor committed reversible error by stating his personal belief in the defendant's guilt. The prosecutor said:

"I think that Mr. Yarborough has now had a just and fair trial and I am convinced beyond any reasonable doubt of his guilt and that the People have proved his guilt beyond a reasonable doubt."

At several other points in the same portion of his argument, the prosecutor emphasized that his conclusion was based on the evidence in the case. It is not error for the prosecutor to state his belief regarding the guilt of a defendant if he indicates that the belief is based upon the evidence and if he does not try to buttress his argument solely by the force of his office or of his personality. *People v McElheny,* 221 Mich 50; 190 NW 713 (1922), *People v Evans,* 36 Mich App 238; 193 NW2d 387 (1971). Taken in context, the prosecutor's statement expressed only a conclusion based upon the proofs submitted in the case and did not inject his office or personality into the decision-making process.

Affirmed.