PEOPLE v McPHERSON

Docket No. 30151. Submitted December 6, 1977, at Detroit.—Decided
    June 6, 1978. Leave to appeal applied for.

Robert D. McPherson was charged with first-degree murder and
    found guilty of manslaughter in Recorder's Court of Detroit,
    Michael J. Connor, J. Defendant appeals, alleging that the trial
    court erred by finding that the prosecutor's failure to produce
    an endorsed witness was excusable because he used due dili-
    gence in attempting to produce him and in denying the defend-
    ant's motion for a directed verdict of acquittal on the first-
    degree murder charge. *Held:*

    1. The trial court's finding of due diligence was not an abuse
    of discretion. The witness was properly found not to be a res
    gestae witness, and the police had checked numerous sources in
    an effort to locate the witness, all to no avail. Production of the
    witness was properly excused.

    2. The trial court should have granted the defendant's motion
    for a directed verdict. On the basis of the evidence presented,
    the jury would have had to impermissibly draw inference upon
    inference in order to find the elements of premeditation and
    deliberation necessary for a verdict of guilty of first-degree
    murder.

    Reversed and remanded.

    J. H. GILLIS, J., dissented. He would find that the evidence
    presented was sufficient to establish premeditation and deliber-
    ation on the part of the defendant, and that the trial court
    therefore properly denied the defendant's motion.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.
[3] 29 Am Jur 2d, Evidence § 148.
    75 Am Jur 2d, Trial §§ 532, 548 *et seq.*
[4] 29 Am Jur 2d, Evidence §§ 161, 162.
    40 Am Jur 2d, Homicide § 263 *et seq.*
[5] 40 Am Jur 2d, Homicide §§ 263 *et seq.,* 438, 439.
    Homicide: presumption of deliberation or premeditation from the
    circumstances attending the killing. 96 ALR2d 1435.
[6] 40 Am Jur 2d, Homicide § 467 *et seq.*

Opinion of the Court

1. Witnesses—Criminal Law—Indorsed Witnesses—Production of Witnesses.

A prosecutor need not indorse a person who is not a res gestae witness but, if such a witness is indorsed, such voluntary indorsement carries with it the burden of production.

2. Witnesses—Criminal Law—Indorsed Witnesses—Production of Witnesses—Diligence.

The nonproduction of an indorsed witness will be excused where the prosecutor's efforts to obtain the witness's presence at trial are diligent; the question of due diligence is within the discretion of the trial judge, and the exercise of that discretion will not be overturned unless a clear abuse is shown.

3. Criminal Law—Acquittal—Directed Verdict—Evidence—Elements of Crime.

It is reversible error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged.

4. Homicide—First-Degree Murder—Directed Verdict—Evidence—Inferences.

A trial court erred by denying a defendant's motion for a directed verdict of acquittal of a charge of first-degree murder where from the evidence presented the jury would have to draw an inference from an inference in order to find premeditation and deliberation.

Dissent by J. H. Gillis, J.

5. Homicide—First-Degree Murder—Premeditation and Deliberation—Inferences—Evidence.

*The presence of premeditation and deliberation can be inferred from the character of the weapon used, the wound inflicted, the prior relationships between the parties, and other evidence surrounding a killing; sufficient evidence to establish premeditation and deliberation was presented by evidence that the defendant admitted shooting five shots into the victim's head, the body was found partially burned and there was evidence the burning was not accidental, and the defendant testified that he kept his gun unloaded and that the bullets were left in a separate room.*

6. Homicide—First-Degree Murder—Evidence—Submission to
   Jury.

   *The issue of whether a charge of first-degree murder should be
   submitted to a jury must be decided upon a determination of
   whether, taking the evidence in the light most favorable to the
   state, there is any evidence upon which a jury can predicate a
   finding of guilty of first-degree murder.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal
Attorney, Appeals, and *William A. Wertheimer,*
Assistant Prosecuting Attorney, for the people.

*John C. Mouradian,* for defendant on appeal.

Before: M. F. Cavanagh, P. J., and J. H. Gillis
and D. C. Riley, JJ.

Per Curiam. Defendant was charged with the
first-degree murder of Yvonne Johnson, MCL
750.316; MSA 28.548. A jury convicted him of
manslaughter, MCL 750.321; MSA 28.553, and he
was sentenced to 9 to 15 years imprisonment. He
appeals by right.

Ms. Johnson's nude and partially burned body
was found in the bedroom of defendant's apart-
ment. Death was caused by five gunshot wounds to
the head and neck. The wounds were made by a
gun fired while its muzzle was in contact with the
victim's skin. A police expert in firearms identifi-
cation testified that the bullets came from defend-
ant's gun.

On prior occasions defendant and the deceased
had been seen playing pool and drinking together.
Witnesses observed both of them at the same bar
on the evening preceding Ms. Johnson's death, but
they were not together.

In a statement to the police, defendant gave the

following account of the events. The deceased accompanied defendant to his apartment, where they had sexual intercourse. During the night the deceased, armed with defendant's gun, wakened defendant and demanded his money. When defendant replied that he had none, the deceased accused him of lying and said that she had seen him cash his check at the bar. Defendant, afraid that Ms. Johnson would pull the trigger, wrestled the gun away from her, at which time she fell on the bed and the first shot hit her. The deceased then "got shot again out of fear and panic", after which defendant fled the apartment.

At some time the mattress caught fire, and the firemen responding to the call discovered the body.

The first issue raised on appeal is whether the trial court erred in finding that the people had exercised due diligence in attempting to procure the presence of an endorsed witness, one Reverend Morgan, and in ruling the nonproduction of the witness excused. Reverend Morgan resided in defendant's apartment house. When interviewed by the police the day the body was found, he told them that he had seen smoke coming from the upstairs window but had not heard any gunshots the night before or that morning. The police had no further contact with the witness until the time of trial, at which time a subpoena for the witness was returned with no response and with no forwarding address. A police sergeant testified that on May 3, 1976, the third day of trial, in an attempt to locate the witness, the police had checked the place of employment which the witness had listed in the November interview, the Wayne County Morgue, the church of which the witness was a pastor, Wayne County Social Services, the Detroit House of Correction, the Wayne

County Jail, Detroit Edison, the gas company, and the post office, all to no avail.

The trial court, after reading the statement which the witness had given the police, ruled that he was not a res gestae witness and found that the prosecution, surprised by the witness's absence, had made a showing of due diligence in attempting to produce the witness.

While the prosecutor need not endorse the name of a person who is not a res gestae witness, the voluntary endorsement of such a witness carries with it the burden of production. *People v Mitchell,* 48 Mich App 361, 364; 210 NW2d 509, 510 (1973), *lv den,* 391 Mich 752 (1973), and cases cited therein. The nonproduction of an endorsed witness will be excused when the prosecution's efforts to obtain the witness's presence at trial are diligent. *Id.* at 365; 210 NW2d at 511, *People v Schwartz,* 62 Mich App 188, 191; 233 NW2d 517, 519 (1975), *lv granted,* 395 Mich 794 (1975). The diligence required of the prosecution is "devoted and painstaking application to accomplish an undertaking". *People v Johnson,* 51 Mich App 224, 230–231; 214 NW2d 713, 716 (1974). The question of due diligence is within the discretion of the trial judge, and the exercise of that discretion will not be overturned unless a clear abuse is shown. *People v Bersine,* 48 Mich App 295; 210 NW2d 501 (1973), *lv den,* 391 Mich 837 (1974).

*People v Harris,* 43 Mich App 531; 204 NW2d 549 (1972), upon which defendant relies to claim that the prosecution's efforts were untimely, is distinguishable. In *Harris* the prosecution, having reason to believe that the accomplice witness would be absent from trial, not only waited until the day of the trial to procure his presence, but at that time made insufficient efforts to find him.

Here, the prosecution, surprised by Reverend Morgan's absence, pursued a number of leads to the witness's location. The trial court did not err in finding due diligence and excusing the nonproduction of the witness. *People v Yarborough,* 61 Mich App 303; 232 NW2d 394 (1975).

The second issue raised by defendant is whether the trial court erred in denying defendant's motion for a directed verdict of acquittal on the charge of first-degree murder, and in submitting this charge to the jury. Defendant contends that there was insufficient evidence from which the jury could find premeditation and deliberation. See *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975).

The prosecution relies heavily upon the testimony indicating that defendant's revolver was kept unloaded, that the bullets were kept separate from the gun, and that the gun was seen, unloaded, the night before the crime. From this evidence the prosecution contends that the jury could infer premeditation and deliberation. Defendant argues that such proof depends upon an inference drawn from an inference, in contravention of *People v Atley,* 392 Mich 298, 315; 220 NW2d 465, 473–474 (1974).

In the landmark case of *People v Morrin,* 31 Mich App 301, 333; 187 NW2d 434, 451 (1971), Judge (now Justice) LEVIN stated the rule controlling here:

"Where the use of a deadly weapon has been held to evidence premeditation there were other circumstances showing motive or plan which would make reasonable the inference that the use of the deadly weapon was not a spur-of-the-moment decision, but rather that it was acquired or positioned with the thought beforehand of using it to kill the victim." (Footnote omitted.)

Given the circumstances of this homicide, the motion for a directed verdict presented the trial court with a close, difficult question. Before ultimately denying it, contrary to his initial inclination, the learned trial judge listened to extensive argument which finally persuaded him that the evidence was sufficient for submission to the jury.

We note that the prosecution presented no evidence of a prior relationship between the defendant and the deceased which would indicate a motive. Neither was there evidence of any threat against the deceased, nor hostile feelings toward her by the defendant, nor of any plan which preexisted the killing. There was only the evidence that the gun was kept unloaded and separate from the bullets as late as the night before their use. However, there is no evidence that it was defendant who ultimately loaded the gun. Although this could perhaps be inferred, one would then have to make the further inference that defendant loaded the gun with the intent to kill Ms. Johnson, and yet another inference that all this transpired under circumstances indicating that defendant's thought processes were "undisturbed by hot blood". *People v Morrin, supra,* 31 Mich App at 329–330; 187 NW2d at 449. We are constrained to agree with defendant that under *People v Atley, supra,* the evidence of premeditation and deliberation was insufficient.

Based upon the foregoing, our disposition is mandated by *People v Vail,* 393 Mich 460, 464; 227 NW2d 535 (1975), which states:

"Thus, where a jury is permitted consideration of a charge unwarranted by the proofs there is always prejudice because a defendant's chances of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict. For this reason it is reversible

error for a trial judge to refuse a directed verdict of acquittal on any charge where the prosecution has failed to present evidence from which the jury could find all elements of the crime charged."

Defendant's conviction is reversed and this cause is remanded for retrial.

J. H. Gillis, J. *(dissenting).* I respectfully dissent. I believe that sufficient evidence was produced at trial to establish premeditation and deliberation on the part of defendant when he committed the killing charged herein.

"The presence of premeditation and deliberation can be inferred from the character of the weapon used, the wound inflicted, the prior relationships between the parties, and other evidence surrounding the killing. *People v Berthiaume,* 59 Mich App 451, 459; 229 NW2d 497 (1975), *lv den,* 394 Mich 788 (1975), *People v Gill,* 43 Mich App 598, 602–603; 204 NW2d 699 (1972), *lv den,* 389 Mich 785 (1973), *People v Lem Dumas,* 25 Mich App 173; 181 NW2d 89 (1970). See *People v Griner,* 30 Mich App 612; 186 NW2d 800 (1971), *People v Wolf,* 95 Mich 625, 629; 55 NW 357 (1893)." *People v Melvin,* 70 Mich App 138, 146–147; 245 NW2d 178 (1976).

In the instant case, defendant admitted shooting five shots from a .38-caliber pistol into decedent's neck and head. The muzzle of the pistol was pressed against the decedent's skin when the shots were fired.

The body was found in a partially burned state and the evidence adduced at trial indicated that the burning was not accidental.

Defendant also testified that he kept his gun unloaded and that the bullets were kept in a separate room. Another witness verified this testi-

mony on the basis of having seen the unloaded gun in its hiding place the night before the killing.

A logical inference can be drawn from this set of circumstances. In order to kill the decedent, the defendant would have had to have gone to two separate rooms to get the gun and the bullets and then return to the bedroom to fire the fatal shots.

Defendant alleges that he did not bring the gun into the bedroom. Instead, he contends that the decedent somehow discovered the gun in its hiding place and also found the bullets in his dresser drawer. The decedent then allegedly loaded the gun and attempted to rob defendant.

Defendant's version of how the gun came to be in the room seems highly improbable.

"We are dealing here with a very narrow issue involving submission of a charge of first-degree murder to the jury. Thus, we must determine that if taking the evidence in the light most favorable to the state there was any evidence upon which a jury could predicate a finding of guilty of murder in the first-degree." *People v Watkins,* 388 Mich 717, 722; 202 NW2d 780 (1972).

Applying the aforementioned rule to the instant case leads this writer to the conclusion that the trial court properly denied defendant's motion to dismiss the first-degree murder charge. Accordingly, I would affirm the defendant's conviction.