PEOPLE v. BAUMAN.

1. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DISCRETION OF COURT.
The granting of a new trial on the ground of newly-discovered evidence generally rests in the sound discretion of the trial court.

2. SAME—NEWLY-DISCOVERED EVIDENCE.
In order to obtain a new trial upon the ground of newly-discovered evidence it should be shown that the evidence, and not merely its materiality, be newly discovered; that the evidence be not cumulative merely; that it be such as to render a different result probable on a retrial of the cause and that the party could not with reasonable diligence have discovered and produced it at the trial.

3. SAME—NEWLY-DISCOVERED EVIDENCE—SECOND-DEGREE MURDER.
Showing made on motion for new trial of prosecution in which defendant was convicted of murder in the second degree did not warrant the trial court in granting a new trial on the ground of newly-discovered evidence.

4. HOMICIDE—PREMEDITATION—EVIDENCE—REQUEST TO CHARGE.
Trial court's admission of testimony by psychiatrist as to premeditation by defendant, charged with murder, given on cross-examination of witness presented on rebuttal was not an error of which defendant may complain after conviction, where defendant made no request to the court to instruct jury to disregard it (CL 1948, § 768.29).

5. SAME—PREMEDITATION—EVIDENCE.
Claim that it was error for jury to be permitted to consider defendant's guilt of first-degree murder because there was

REFERENCES FOR POINTS IN HEADNOTES
[1] 39 Am Jur, New Trial § 157.
[2, 3] 39 Am Jur, New Trial § 158 et seq.
[4] 3 Am Jur, Appeal and Error § 344.
[7] 58 Am Jur, Witnesses § 685 et seq.
[9, 10] 27 Am Jur, Indictments and Informations §§ 46, 150.

an absence of testimony as to premeditation cannot be considered, where there was not only testimony of premeditation which defendant claims should not have been admitted, but other testimony on the subject as well relating to statements and conduct of defendant shortly before he shot his wife.

6. SAME—FIRST-DEGREE MURDER—PREMEDITATION—EVIDENCE.

It was not error to permit jury to consider issue of murder in the first degree, where there was evidence of premeditation from which the jury could have found defendant guilty of murder in the first degree.

7. SAME—IMPEACHMENT.

It was not error for trial court to permit introduction of impeaching evidence in rebuttal of defendant's testimony in prosecution for murder of his wife denying that he had ever hit, kicked or threatened to kill her.

8. SAME—INSTRUCTIONS—PRESUMPTIONS—PERMISSIBLE VERDICTS.

Trial court's instructions to jury as to verdict it might return in prosecution for murder of his wife was adequate, where it stated the presumption of innocence must be overcome by evidence satisfying the jury beyond a reasonable doubt and that verdict could be either (1) murder in the first degree, (2) murder in the second degree, (3) manslaughter, or (4) not guilty, in view of the admission by defendant's counsel that defendant had shot his wife.

9. CRIMINAL LAW—REBUTTAL WITNESSES—INDORSEMENT ON INFORMATION—DISCRETION OF COURT.

Even if it be necessary to have the names of rebuttal witnesses indorsed on the information, the trial judge has a discretionary right to permit it to be done when the witness is called, and if no objection is made at the time defendant may not raise the question after conviction (CL 1948, § 767.40).

10. SAME—REBUTTAL WITNESSES—INDORSEMENT ON INFORMATION—OBJECTION—CROSS-EXAMINATION—WAIVER.

Defendant in prosecution for murder who failed to object to examination of unindorsed witness called on rebuttal, and cross-examined such witness, waived the statutory requirement of indorsing names of witnesses for the prosecution on the information (CL 1948, § 767.40).

Appeal from Macomb; Spier (James E.), J. Submitted October 11, 1952. (Docket No. 91, Calendar No. 45,007.) Decided January 7, 1952. Rehearing denied March 6, 1952.

Harold Albert Bauman was convicted of murder in the second degree.   Affirmed.

*Alean B. Clutts* (*Samuel Brezner,* of counsel), for appellant.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

Sharpe, J.   Defendant, Harold Albert Bauman, was tried on an information which alleged that "on the 26th day of June, A.D. 1948, at the city of Mt. Clemens in the county of Macomb aforesaid, one Harold Albert Bauman, feloniously, wilfully and of his malice aforethought, did kill and murder one Veda Bauman contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the State of Michigan." He was found guilty of murder in the second degree and sentenced to life imprisonment.

Defendant and his wife, Veda Bauman, lived at 210 N. Gratiot avenue in the city of Mt. Clemens in a building where deceased's beauty shop was operated and in the rear of which defendant, Harold Albert Bauman, had his radio repair shop. Eighty-seven feet south of the Bauman home was a veterans' club, containing a bar, often frequented by the deceased. On June 25, 1948, defendant ate his dinner at his mother's home, went to a movie, returned home about 10 p.m., listened to a radio broadcast and then fell asleep. Shortly after 1 a.m., on June 26, 1948, he awoke and through the window saw his wife in the veterans' club drinking with one Robert Pett. At this time deceased closed the venetian blinds in the bar, thereby shutting off her husband's view. Defendant took his gun, went to the bar and shot his

wife.  He returned home and called the police.  Mrs. Bauman died as a result of her injuries.

Prior to trial defendant was examined by Doctors Alfred E. Eyres, Alexander Grinstein and A. Tauber, psychiatrists appointed by the State hospital commission, who made the following report:

"Your psychiatrists have examined the defendant, Harold Albert Bauman, both singly and collectively, and herein submit a report of their findings as to his present mental condition.

"The patient is not psychotic.  He is adequately able to aid and assist counsel in his own defense.  He understands the nature of the charge pending against him and his relationship to it.  There is presence of no mental disease, condition, or defect which would impair his criminal responsibility. Therefore, we recommend that he stand trial."

The cause came on for trial resulting in a conviction of second-degree murder.  Subsequently a motion for a new trial was made and denied.  Upon leave being granted, defendant appeals and urges that he is entitled to a new trial because of newly-discovered evidence.

As heretofore stated, defendant was examined by 3 psychiatrists, one of whom was Dr. Eyres.  During the trial, Dr. Eyres was called by the people as a rebuttal witness and on cross-examination testified that the offense was premeditated and that defendant Harold Albert Bauman admitted he had planned the slaying.  Subsequent to the conviction, counsel for defendant called upon Dr. Grinstein and Dr. Tauber separately and each stated that he had no recollection of the defendant having acknowledged planning the offense and that if such a statement was made by defendant he would have remembered it. Defendant also proposed to show by affidavit of Emma Bauman, his mother, that on or about July 25, 1948 (1949), subsequent to the trial, she called

upon Dr. Eyres and asked him why he testified as he did at the trial relative to defendant planning the offense; that Dr. Eyres told her he had not so testified, became impatient, indignant and ordered her from the office. The people filed an answer to defendant's motion for a new trial, which answer included a letter from Dr. Eyres in which he reaffirmed his statement made at the trial that defendant had premeditated homicide and stated he also informed Mrs. Bauman that the statements made at the trial were correct. It is to be noted that the statements of Dr. Grinstein and Dr. Tauber were presented to the trial court through the affidavit of counsel for defendant. The granting of a new trial on the ground of newly-discovered evidence generally rests in the sound discretion of the trial court.

In *Canfield* v. *City of Jackson*, 112 Mich 120, we discussed the requisites of newly-discovered evidence. We there said:

"To entitle one to a new trial upon this ground it should be shown: *First,* that the evidence, and not merely its materiality, be newly discovered; *second,* that the evidence be not cumulative merely; *third,* that it be such as to render a different result probable on a retrial of the cause; *fourth,* that the party could not with reasonable diligence have discovered and produced it at the trial."

See, also, *People* v. *Inman,* 315 Mich 456; *People* v. *Paugh,* 324 Mich 108.

In our opinion the affidavits of defense counsel and Mrs. Bauman did not warrant the trial court in granting a new trial.

It is also urged that it was error to have permitted Dr. Eyres to give evidence as to premeditation. The record shows that Dr. Eyres was called by the people as a rebuttal witness and upon cross-examination by defendant's attorney the following questions were asked and answers given:

"*Q.* You as a physician and psychiatrist are in no position to tell this jury or anyone else whether there was any premeditation in the mind of Mr. Bauman or anyone else?

"*Mr. Jacob* (prosecuting attorney): I object. That is a question for the jury to decide, asking for a conclusion.

"*A.* I feel I am in position to tell the jury and also you that this was definitely premeditated.

"*Q.* Are you in position to state what was in that man's mind over a given period?

"*A.* He went over it very carefully and very thoroughly with me.

"*Q.* Will you tell the jury the story he told you?

"*Mr. Jacob:* I object.

"*Mr. Day* (defendant's attorney): I am entitled to know what he bases his conclusions on.

"*The Court:* He may answer.

"*A.* I will narrate the story briefly. The story that the prisoner gave to me was stress and striving and strain of long duration with his marital partner. He told me that for a long period of time his wife had been given to alcoholic excesses at various periods of time. He also told me that they had really never got along throughout their marital life or throughout their marital existence. He told me about securing the gun he had obtained and admitted to me he had shot his wife. He admitted to me he planned it ahead of time, wasn't something he did on the spur of the moment.

"*Q.* Doctor, he told you that?

"*A.* Yes, he did, and he went through the details of going into the tavern and asking where the wife was and of shooting the shots and then leaving and then calling the police. Those are the things I recall. He didn't tell me that he couldn't remember what happened after the blinds were closed. I examined Mr. Bauman on the 25th of July at 7850 East Jefferson avenue in Detroit."

It is to be noted that the prosecuting attorney offered 2 objections while the cross-examination was being conducted. It clearly appears that the answers given were in response to the questions asked. We are of the opinion that this issue is controlled by *People* v. *Geanakopoulos,* 320 Mich 430. In that case defendant was tried for statutory rape. The attorney for defendant, on cross-examination had the complaining witness testify as to other acts of intercourse than the offense charged. Upon appeal, defendant urged that such testimony was not admissible for any purpose and the trial court should have charged the jury not to consider it for any purpose whatsoever. We there said:

"The position now taken by defendant's counsel is directly contrary to that taken by defendant's attorney at the trial; and further defendant did not request the court to charge the jury that the testimony should not be considered for any purpose. See *People* v. *Barringer,* 311 Mich 345; CL 1929, § 17322 (Stat Ann § 28.1052).* As indicated, the testimony of which defendant now complains was brought into the case in his behalf by his own attorney. Hence it might well be said in the instant case, as in *People* v. *Prevost,* 219 Mich 233, 245: 'If any ill effects resulted from it in the minds of the jurors the defendant has the satisfaction of knowing that no one was to blame for the outbreak but himself.'"

In the case at bar defendant's counsel made no request of the trial court to instruct the jury to disregard such testimony. It is now too late to complain.

It is also urged that in the absence of testimony as to premeditation it was error to permit the jury to consider defendant's guilt of first-degree murder. Such a claim cannot be considered as it is based on the theory that there was no testimony as to pre-

---

* CL 1948, § 768.29.—Reporter.

meditation. In addition to the testimony of Dr. Eyres there is testimony that defendant did not appear at the V.F.W. hall until from 8 to 20 minutes after Mrs. Bauman closed the venetian blinds; that when defendant entered the hall he asked, "Where is she" and proceeded to the table where she was sitting and began shooting.

In *People* v. *Wolf,* 95 Mich 625, 629, we said:

"1. The learned counsel for the respondent contends that there was no evidence to sustain the verdict, because there was no proof of previous deliberation or premeditation. This would result in holding that deliberation and premeditation cannot be inferred from the character of the weapon used, the wounds inflicted upon vital parts, the circumstances surrounding the killing, the acts, conduct, and language of the accused before and after the killing, and the improbability of the story told by him."

See, also, *People* v. *Vinunzo,* 212 Mich 472.

In our opinion there was evidence of premeditation from which a jury could have found defendant guilty of murder in the first degree. It was not error to permit the jury to consider the issue of first-degree murder.

It is urged that the court erred in permitting witnesses Lawrence A. Geise and Anna Geise to testify as to a claimed quarrel between defendant and his wife in 1940; and in permitting the testimony of Waldo Pease as to a claimed quarrel between defendant and wife during the year 1935. The record shows that on cross-examination defendant denied that he ever hit, kicked or threatened to kill his wife. It appears that Waldo Pease testified that 3½ years before, he saw defendant chasing his wife down a sidewalk. "She was running and screaming, hollering, 'He is going to shoot me.' I seen something in his right hand. What it was I don't know, I saw them running in this particular area, maybe

10 or 15 seconds." It also appears that Lawrence and Anna Geise testified that in the fall of 1940 defendant and wife visited their farm. When the Baumans left the house, Geise and wife heard Mrs. Bauman scream outside in the orchard. They looked out and saw Harold Bauman hitting and kicking his wife. Mrs. Bauman was lying down on the sand screaming, "Don't kill me, don't kill me, Harold." This event took place 2 or 3 rods from the house. We note that defendant Bauman did not take the witness stand to deny any of this testimony given in rebuttal. The trial court permitted the introduction of this evidence for the purpose of impeaching defendant's truth and veracity. In our opinion it was not error to permit the jury to hear this evidence. It was proper rebuttal evidence.

Defendant also urges that the instructions failed to permit the jury to find the defendant not guilty. We note that at the close of the people's case, defendant's counsel made an opening statement to the jury in which he discussed the elements of murder in the first degree, murder in the second degree and manslaughter. He concluded his statement with the following:

"I know I read that fast and the court will give you instructions later on this question of murder in the 3 degrees. Before putting any witness on I wanted an explanation to you that there are 3 types of murder which is proper for you to decide. We are not here to prove to you it was anyone else. It would be silly to deny the fact that a shooting took place. What we intend to prove and show by witnesses on this stand is to elaborate on the testimony that has already been presented. After that testimony is in then it will be your job to decide the degree of murder."

The trial court, in addition to discussing the elements of murder in the first degree, murder in the

second degree and manslaughter, instructed the jury as follows:

"Your verdict will be either guilty of murder in the first degree, or guilty of murder in the second degree, or third one, guilty of manslaughter. Then, of course, there is the fourth verdict which I must charge you, or not guilty. Those are the 4 possible verdicts which you could reasonably reach under the testimony in this case.  *  *  *

"The mere fact that this defendant is charged with an offense is no proof in and of itself that he is guilty. In fact, you might say the contrary is true because under our law every defendant charged with any offense is presumed to be innocent. This defendant stands here today, he is presumed to be innocent. That presumption remains with him throughout this trial until you members of the jury in the jury room after the case is submitted to you reach the conclusion that you are satisfied beyond reasonable doubt that he is guilty of one of the offenses charged.  *  *  * If you are not satisfied beyond a reasonable doubt, beyond that type of doubt that he is guilty of one of the offenses charged, of course, it would be your duty to return a verdict of not guilty."

The record shows that the trial was largely conducted on the issues of murder and manslaughter. There is no denial by any witness that defendant shot his wife. Walter Bobcean, captain of police, testified: "I was on duty on June 26, 1948, at the night desk. I received a call at 1:30 a.m. A man called me and said, 'I shot my wife', says, 'Come up and get me.' He said he was at 210 North Gratiot." Earl Butterly, a police officer, testified that he went to 210 N. Gratiot avenue to investigate a shooting. "We knocked on the door and a man was there and said, 'I just shot my wife; she is over there.' He pointed toward the V.F.W. hall."

Defendant testified that he called the police and that the police came to his home in response to his call:

"*Q.* Where did you get the information that you shot your wife?

"*A.* Well, I learned —when I come in I stood there with the gun in my hand and it was empty and the only thing I could think of I went over to the Vet's and shot her. I don't recall how I felt when I left the house."

Because of the admission of defendant's counsel and the theory upon which the case was tried, we are of the opinion that the trial court adequately instructed the jury on the question of bringing in a verdict of not guilty.

It is also urged that it was error to permit Dr. Eyres to testify as a rebuttal witness without his name being indorsed on the information.* Defendant relies on *People* v. *Casey,* 124 Mich 279, where. we held that it was error to permit the people to swear a witness in rebuttal whose name was not so indorsed and where no showing was made that the name of such witness or the materiality of his testimony was unknown to the prosecutor. In the case at bar, no objection was made by defendant when Dr. Eyres was offered as a witness on rebuttal. Moreover, defendant's counsel cross-examined the witness and did not ask that his testimony be stricken.

In *People* v. *Bauer,* 216 Mich 659, defendant was convicted of attempting to take possession of and drive away an automobile, the property of one Ralph Harrison. A witness, McGregor, claimed to have intercepted defendant in his effort to remove the car. His name was not indorsed on the information, but he was called by the prosecution in rebuttal. No ob-

* See CL 1948, § 767.40 (Stat Ann § 28.980).—Reporter.

jection to his testimony was made because his name was not indorsed on the information. We there said:

"Even if it be necessary to have the names of rebuttal witnesses indorsed, a point not discussed by counsel, the trial judge has a discretionary right to permit it to be done when the witness is called. *The defendant may not raise the question after conviction.*" (Italics supplied.)

In our opinion, defendant by failing to object to the calling of the witness, his cross-examination of him and his failure to ask the court to strike such testimony waived the statutory requirement of indorsing the names of witnesses for the prosecution on the information.

The judgment is affirmed.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.