CHAMPION v. CHAMPION.

1. EVIDENCE—ADMISSION—DISCRETION OF COURT.
   Whether or not a sufficient foundation has been laid for the admission of evidence is a matter addressed to the discretion of the trial court.

2. SAME—AUTHENTICITY OF PROFFERED WRITING.
   Proof that a proffered writing is authentic may be made by direct or circumstantial evidence.

3. SAME—HANDWRITTEN LETTER—IDENTIFICATION.
   The genuineness of a handwritten letter may best be established by identification of the handwriting but when this is not possible, resort may be made to indirect or circumstantial evidence.

4. DIVORCE—LETTER—ADMISSION IN EVIDENCE.
   A sufficient foundation for admission of letter to plaintiff wife from a male friend held, to have been made by her husband, where it speaks of having sent several letters to her at various places on her European itinerary.

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur, Evidence § 253.
[2] 20 Am Jur, Evidence § 930.
[3] 20 Am Jur, Evidence § 955.
[6] 17 Am Jur, Divorce and Separation §§ 173, 389, 392.
[8] 17 Am Jur, Divorce and Separation § 51.

5. SAME—NAME OF MALE FRIEND OF WIFE.

Unobjected to introduction in evidence of name of male friend of plaintiff wife, contrary to pertinent statute, did not constitute reversible error in suit for divorce, where no misconduct was asserted by defendant who merely answered the bill of complaint and prayed that it be dismissed (CL 1948, § 551.305).

6. SAME—NONSUPPORT—BURDEN OF PROOF.

One who charges nonsupport as ground for divorce has the burden of establishing that the defendant has grossly or wantonly and cruelly refused or neglected to furnish support as required by statute (CL 1948, § 552.7).

7. SAME—NONSUPPORT—EVIDENCE.

Evidence presented in wife's suit for divorce on ground of nonsupport *held,* insufficient to justify decree for her, where it appears that, by agreement, the parties embarked upon a plan of living far higher than they had ever dreamed of before and there is nothing to show defendant was guilty of nonsupport or that he has squandered his earnings on himself to the detriment of his family.

8. SAME—EXTREME CRUELTY.

A divorce may not be granted merely because the parties, from unruly tempers or mutual wranglings, live unhappily together, it being necessary to show misconduct entirely subverting the family relations by rendering the association intolerable in order to find actionable extreme cruelty.

9. SAME—EXTREME CRUELTY—NONSUPPORT.

Wife's bill of complaint for divorce on ground of extreme and repeated cruelty and of nonsupport *held,* correctly dismissed by trial judge, where defendant husband had appeared and controverted and denied the charges made.

.Appeal from Allegan; Smith (Raymond L.), J. Submitted June 13, 1962. (Docket No. 58, Calendar No. 49,468.) Decided October 1, 1962.

Bill by Donna Champion against Marshall Champion for divorce on grounds of extreme cruelty and nonsupport. Bill dismissed. Plaintiff appeals. Affirmed.

*Elizabeth Ramsey,* for plaintiff.

*Chester A. Ray,* for defendant.

Adams, J. Plaintiff brought an action for divorce charging defendant with extreme cruelty and non-support. The trial judge found that neither ground had been made out and dismissed the bill of complaint. Plaintiff appeals, alleging error in respect to these findings and also because the court failed to exclude testimony identifying by name a male friend of the wife and admitted a letter purportedly written to the wife.

The parties were married in 1950. Four children were born of the marriage. Plaintiff diagnosed their marital difficulties as follows:

"In February of 1960, I inherited some money from my father's estate and that is when the marital difficulties commenced."

While we are not informed as to the amount of plaintiff's inheritance, her bill of complaint alleges that she will be required to pay a Federal estate tax of approximately $35,000.

Prior to the inheritance, the parties lived in modest circumstances. Defendant was an insurance salesman, earning $460 per month. The parties had been given 2 lots by defendant's parents and built a house for $13,950. Approximately $7,000 remained to be paid on the property. They also had other household bills and loans in the amount of $5,099.28 plus a balance on a chattel mortgage for their automobile of $1,020.61.

Plaintiff used some of her inheritance to pay off the chattel mortgage, the household bills and loans. She invested $3,700 in stock taken jointly with the defendant. $10,000 was paid to purchase a house, resold on a land contract, in a tenancy by the en-

tireties with defendant. Plaintiff purchased a $1,-436.45 diamond ring for defendant. In March of 1960, the entire family went on a trip to Hawaii at .a cost of $3,017.82. Plaintiff rebuilt the home of the parties at a cost of $16,215.23. She had a swimming pool constructed for $6,004.60. New furniture was purchased for $5,349.39 on which she paid $2,-149.39. A 1960 Buick automobile was purchased to replace their Ford at an additional cost of $2,060.

Plaintiff made trips to New Orleans, Washington, D. C., North Carolina, and Europe. On some of these trips she was accompanied by her children.

Plaintiff had known a master sergeant in the Marine Corps for a number of years and had carried ·on a correspondence with him. Plaintiff had seen the master sergeant in Washington, D. C., North Carolina, and Plainwell. Plaintiff had postoffice boxes at Otsego and Kalamazoo because Plainwell is a small town and because, she says, she wished to spare her husband's feelings and not to cause any gossip.

Defendant testified that the night after plaintiff returned from Europe she spread her things out all over the floor in the front room of their house, and that he there saw a letter addressed to Donna Champion at the Hotel Mt. Royal, London, England, Europe, from the master sergeant from his base at Cherry Point, North Carolina. Defendant could not identify the handwriting as being that of the master sergeant. The letter was received in evidence over the objection of the plaintiff. Plaintiff had admitted her correspondence with the master sergeant. Plaintiff stated she never saw the letter.

The rule is well recognized that whether or not a sufficient foundation has been laid for the admission of evidence is a matter addressed to the discretion of the trial court. 32 CJS, Evidence, § 706, p 608.

Proof that the proffered writing is authentic may be made by direct or circumstantial evidence. 3 Jones, Evidence (5th ed), § 632, Letters, p 1204. While it is agreed that the genuineness of a letter can best be established by identification of the handwriting, when this is not possible, indirect or circumstantial evidence may be resorted to. *People* v. *Adams,* 162 Mich 371, 385. The contents of the letter are by no means controlling in this case. They do indicate that the letter was genuine since the writer speaks of having sent several letters to plaintiff at various places on her European itinerary. Under the circumstances, a sufficient foundation had been laid for its receipt in evidence.

Plaintiff complains of the introduction of the name of the master sergeant in evidence contrary to the statute. CL 1948, § 551.305 (Stat Ann 1957 Rev § 25.195). No misconduct was asserted by defendant who merely answered the bill of complaint and prayed that it be dismissed. The testimony was received without objection.

Plaintiff accuses defendant of one incident of physical abuse which occurred at 2 a.m., when plaintiff returned home, and which she describes as follows:

"I came in the house and immediately he grabbed me and threw me down and pulled my hair."

Plaintiff accuses defendant of having made several trips to Calumet City to see a couple of nightclub hostesses. Defendant admits having made 2 or 3 such trips with another man.

Subsequent to the filing of this action for divorce, plaintiff has removed herself and her children to Texas "to be near relatives who offered to assist her during the pendency of this cause."

We agree with the trial judge that there is nothing in the record to support a finding that defendant is guilty of nonsupport or that he has squandered his earnings on himself to the detriment of his family. It is clear that the parties, by agreement, embarked upon a plan of living far higher than they had ever dreamed of before and that whatever was spent was spent with their joint knowledge and consent.

As was pointed out in *Lazerow* v. *Lazerow,* 362 Mich 27, one who charges nonsupport has the burden of establishing that the defendant has "grossly or wantonly and cruelly refused or neglected" to furnish support as required by CL 1948, § 552.7 (Stat Ann 1957 Rev § 25.87). See, also, *Hadley* v. *Hadley,* 323 Mich 555, and *Magarell* v. *Magarell,* 327 Mich 372.

The charge of extreme cruelty is equally ill-founded. In the early case of *Cooper* v. *Cooper,* 17 Mich 205 (97 Am Dec 182), at page 210, the court said:

"The law does not permit courts to sever the marriage bond, and to break up households, merely because parties, from unruly tempers or mutual wranglings, live unhappily together. It requires them to submit to the ordinary consequences of human infirmities, and of unwise selections, and the misconduct which will form a good ground for a legal separation must be very serious, and such as amounts to extreme cruelty, entirely subverting the family relations by rendering the association intolerable."

The above quotation has been cited over and over again in Michigan cases. *Kennedy* v. *Kennedy,* 325 Mich 613, 617. Also, to the same effect, see *McMillan* v. *McMillan,* 364 Mich 355; *Frey* v. *Frey,* 330 Mich 60.

Defendant has appeared in this action to controvert and deny the charges of extreme and repeated cruelty and of nonsupport. Plaintiff failed to make

a case. The trial judge correctly dismissed the bill of complaint.

Affirmed. Costs to appellee.

CARR, C. J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.