PEOPLE v MELVIN

1. Criminal Law—Preliminary Examination—Burden of Presenting Evidence—Prima Facie Case—Elements of Crime Charged.

   The prosecution is required, at a preliminary examination, to present evidence to establish a prima facie case for each element of the crime charged.

2. Homicide—Preliminary Examination—Premeditation and Deliberation—Short Form Charge of Murder—Abuse of Discretion.

   The prosecution is not strictly bound, at a preliminary examination on a murder charge, to show the premeditation and deliberation necessary for first-degree murder where the short form charge of murder is used, however, a district court's finding, at the preliminary examination, of premeditation and deliberation will not be reversed unless a clear abuse of discretion is shown.

3. Criminal Law—Witnesses—Prior Arguments and Altercations—Failure to Object—Appeal and Error.

   The failure of a defendant to object, in the trial court, to testimony by certain witnesses as to prior marital arguments and altercations between the defendant and his wife, whom he is accused of murdering, will normally foreclose raising the matter on appeal and the defendant can obtain a reversal on this issue only by showing manifest injustice.

4. Criminal Law—Evidence—Testimony of Prior Acts—Motive and Intent—Relevancy of Evidence.

   Testimony of prior acts may be admitted as evidence to show a defendant's motive and intent, if the evidence is also relevant.

References for Points in Headnotes

[1, 2] 21 Am Jur 2d, Criminal Law § 449.

[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[4] 21 Am Jur 2d, Criminal Law §§ 82, 85.

[5–8] 29 Am Jur 2d, Evidence §§ 878, 879.

   40 Am Jur 2d, Homicide §§ 274, 423.

   Written recitals or statements as within rule excluding hearsay. 10 ALR2d 1035.

[9, 10] 40 Am Jur 2d, Homicide §§ 438, 439, 501.

5. HOMICIDE—EVIDENCE—ADMISSION OF LETTER—FOUNDATION—
    HANDWRITING.

    There was a sufficient foundation for admitting into evidence a
    threatening letter allegedly written by a defendant to his wife,
    with whose murder he was charged, where it was established
    that the letter was found among the personal effects of the
    defendant's wife, the letter was addressed to "Honey" and
    signed with the defendant's first name, the victim's sister
    testified that the handwriting was that of the defendant, and
    the letter's reference to fights sparked by threats of separation
    were verified by other testimony.

6. EVIDENCE—DISCRETION OF TRIAL JUDGE—PREJUDICIAL EFFECT—
    PROBATIVE VALUE.

    It is within the discretion of the trial judge to determine whether
    or not the prejudicial effect of evidence outweighs its probative
    value.

7. EVIDENCE—HOMICIDE—ABUSE OF DISCRETION—REMOTENESS OF
    LETTER—RELEVANCE.

    Admitting in evidence a letter from a defendant to his wife in the
    defendant's trial for his wife's murder was not abuse of discre-
    tion, despite the defendant's objection that the letter was too
    remote in time, where (1) the letter was no more than 2-1/2
    years old, and (2) the letter's logical relevance was clear in
    light of the prosecution's theory of the murder.

8. HOMICIDE—EVIDENCE—HEARSAY—WRITTEN STATEMENT—EXCEP-
    TION—STATE OF MIND OF DECLARANT.

    A letter written by a defendant which was a written-out-of-court
    statement offered to establish the truth of the defendant's
    statement that he had decided to kill his wife if the fights over
    her repeated departures continued was hearsay even though
    properly authenticated; however, since the defendant's state of
    mind is a material issue the letter became admissible under the
    recognized hearsay exception for proofs of the declarant's state
    of mind.

9. HOMICIDE—MURDER—PREMEDITATION—DELIBERATION.

    Premeditation and deliberation can be inferred from the charac-
    ter of the weapon used, the wound inflicted, the prior relation-
    ship between the parties, and other evidence surrounding a
    killing.

10. HOMICIDE—FIRST-DEGREE MURDER—INSTRUCTIONS TO JURY—PRE-
    MEDITATION—DELIBERATION—APPEAL AND ERROR.

    The Court of Appeals cannot say that a trial court erred in

instructing the jury on first-degree murder where sufficient admissible evidence of premeditation and deliberation was adduced to permit an inference of first-degree murder.

Appeal from Washtenaw, Ross W. Campbell, J. Submitted June 4, 1976, at Lansing. (Docket No. 23081.) Decided July 19, 1976. Leave to appeal applied for.

Ronald D. Melvin was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* Senior Assistant Prosecuting Attorney, for the people.

*Ronald B. Keys,* for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK, JR., and E. H. PAPP,* JJ.

ALLEN, J. Defendant, Ronald Dean Melvin, was charged with the first-degree murder of his wife, Yvonne Melvin, contrary to MCLA 750.316; MSA 28.548. The information was later amended to the statutory short form of murder with degree unspecified, MCLA 767.44; MSA 28.984, MCLA 767.71; MSA 28.1011. *People v Strutenski,* 39 Mich App 72; 197 NW2d 296 (1972). Defendant was convicted by a jury of second-degree murder.

Ypsilanti police were summoned for help by defendant in the early morning of April 10, 1974. Defendant was very distraught and told police over the phone, "I just killed my wife". When units arrived, they found the victim face down in the bedroom with a wound in the left side of her head and without any signs of life. Defendant and

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

his infant son were the only other persons in the apartment. Defendant kept repeating, "I killed her. I'm sorry, help me". A suitcase half full of folded baby clothes was lying near the bed.

After preliminary investigation, the police suggested to defendant that he take his son next door to a neighbor friend, Linda Paden. When Miss Paden's boyfriend answered the door, defendant told him, "Bob, I just blew my old lady away". He broke down as Miss Paden appeared, saying he had hurt his wife real bad, in fact killed her. Later, at the State Police Post, after asking a trooper whether his wife was dead, he rhetorically remarked, "buckshot at three feet would do it".

On April 14, 1974, members of the victim's family accompanied an officer to the apartment to secure some of the personal possessions of deceased. In a metal file box, a note in defendant's hand was discovered, apparently written some months before. The contents were later admitted into evidence:

"Honey,
You know I love you very much. But I can't put up with this fighting all the time. What are you trying to do? Put me back in the nut house? You r (sic) doing a damned good job at it.
If you want to leave go ahead but remember one thing. I'm not losing or giving up what is mine! I'll fight this time at any price! Even if I got to *Kill* for it. If you don't believe me try it and see.

Love
Ron"

At trial, various neighbors testified as to incidents indicating that defendant and deceased had a stormy marriage relationship. On one occasion defendant was holding a crutch over deceased, who

was bleeding from the mouth and severely bruised. On another occasion defendant was seen pursuing his wife with a pistol. On another occasion, he put a knife to her throat and threatened to "shove it through".

Upon the close of the evidence, the jury retired to deliberate, but returned shortly afterward inquiring about the legal distinction between second-degree murder and voluntary manslaughter. Ultimately, they returned a verdict of second-degree murder.

On appeal, defendant assigns as error (1) the finding by the examining magistrate of probable cause that the offense of first-degree murder was committed; (2) admission in evidence of prior marital arguments and altercations as testified to by neighbors; (3) admission in evidence of the death-threat letter; (4) insufficiency of evidence of premeditation and deliberation; (5) instructing the jury on the offense of first-degree murder. We discuss the alleged errors *seriatim.*

1. At preliminary examination, the prosecution is required to present evidence to establish a prima facie case for each element of the crime charged. *People v Paille #2,* 383 Mich 621; 178 NW2d 465 (1970), *People v Asta,* 337 Mich 590, 611; 60 NW2d 472 (1953). Because the statutory short form of murder was used here, the prosecution was not strictly bound to show the premeditation and deliberation necessary for first-degree murder. However, the district court made a preliminary finding of premeditation and deliberation, and this Court finds the evidence sufficiently persuasive to sustain the finding. In any case, the district court will not be reversed unless a clear abuse of discretion is shown. *People v Bethea,* 65 Mich App 375, 379; 237 NW2d 336 (1975), *People v*

*Stinson,* 58 Mich App 243; 227 NW2d 303 (1975), *lv den* 394 Mich 761 (1975).

2. Defendant argues the neighbors' testimony should not have been allowed at trial. Yet, no objection was raised there. This fact will normally foreclose raising the matter on appeal. *People v Webb,* 13 Mich App 625; 164 NW2d 697 (1968), *People v Loudenslager,* 327 Mich 718; 42 NW2d 834 (1950). Only by showing manifest injustice can defendant now obtain reversal on this matter. *People v Jolly,* 51 Mich App 163; 214 NW2d 849 (1974).

Testimony of prior acts may be admitted to show defendant's motive and intent, if the evidence is also relevant. *People v Campbell,* 61 Mich App 600, 604; 233 NW2d 103 (1975), *People v Wood,* 44 Mich App 99; 205 NW2d 66 (1972), *People v Simon,* 23 Mich App 64; 178 NW2d 106 (1970). The testimony was relevant to establish the "malice aforethought" even if not premeditation and deliberation. Defendant had argued that the killing was an accident. The testimony of the neighbors was evidence to rebut this interpretation, proving malice, and demonstrating a motive. *People v Powell,* 223 Mich 633; 194 NW 502 (1923). The relevancy seems clear. *People v Smedley,* 37 Mich App 325; 194 NW2d 383 (1971), *People v Burton,* 28 Mich App 253; 184 NW2d 336 (1970).

3. Since the defendant admitted shooting his wife but testified that the killing was accidental, the importance of the letter to the prosecution's case is obvious. The defense repeatedly objected to its admission—during both the trial and the preliminary examination. We believe that the letter was properly admitted. Given the importance of this single piece of evidence, each of the defendant's grounds for opposing its admission will be discussed separately.

First, he argues that the foundation for admission of the letter was inadequate because there was not a sufficient showing that the defendant wrote the letter. The letter was found among the defendant's wife's personal effects; it was addressed to "Honey" and was signed "Ron"; the victim's sister testified that the handwriting was the defendant's. The evidence was sufficient to establish that the defendant wrote the letter. *Champion v Champion,* 368 Mich 84; 117 NW2d 107 (1962), McCormick on Evidence (2d ed), § 221, p 547.

It is next suggested that the letter was inadmissible because the threat it contains was too remote in time to be relevant. The letter was undated. However, the defendant and the victim were married on November 20, 1971; and the homicide occurred on April 10, 1974. Assuming that the letter was written by the defendant to the victim, it was almost certainly no more than 2-1/2 years old.[1] Given the prosecution theory that the defendant killed his wife because she was about to leave him again, the logical relevance of the letter is clear. The argument that the letter was too old to be admitted is an attack on its legal relevancy, *i.e.,* whether its improper prejudicial effect outweighs its proper probative value. Evaluation of those factors is entrusted to the discretion of the trial judge. *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974). There was no abuse of that discretion in the present case. See also *People v Bauman,* 332 Mich 198; 50 NW2d 757 (1952).

---

[1] At trial, the defendant admitted that he wrote the letter to the victim at a time when she had just left him and returned to her parents. If the defense motion to suppress the letter had been granted, that testimony might not have been presented. It should be emphasized that our finding of admissibility is not based upon the defendant's testimony.

Finally, the defendant argues that the foundation for admission of the letter was inadequate because it was not established that the letter was actually written to the victim. The defendant had been married previously; apparently this argument is intended to suggest that the letter may have been addressed to his first wife. No Michigan case has ever stated what, if anything, the party moving for admission of a letter must do if it is suggested that the letter was not addressed to the person in whose possession it was found. In *Armistead v Brooke,* 18 Ark 521 (1857), and *Wilkins v Burton,* 5 Vt 76 (1835), letters to unidentified or non-existent addressees were admitted. But the present case is distinguishable because the letter is obviously irrelevant unless it was addressed to the victim. In the absence of controlling authority, we hold that the identity of the addressee may be established in the same manner as the identity of the author of a letter. Identity may be established by circumstantial evidence. *Flickema v Henry Kraker Co,* 252 Mich 406; 233 NW 362 (1930). The letter was found among the victim's personal effects; it was addressed to "Honey", a common endearment; its references to fights sparked by threats of separation were verified by other testimony. Given that evidence, we believe that an adequate foundation was established.[2]

Even though properly authenticated, the letter was still hearsay since it was a written out of court statement offered to establish the truth of the defendant's statement that he had decided to kill his wife if the fights over her repeated departures continued, McCormick on Evidence (2d ed), § 246, p 584. However, once properly authenticated, it became admissible under the recognized

---

[2] See note 1, *supra.*

hearsay exception for proofs of the declarant's state of mind where the state of mind is a material issue. McCormick on Evidence (2d ed), § 294, p 694. The letter might also qualify as an admission; but because of its remoteness in time to the homicide, we prefer to rely upon the state of mind exception.

4. The meaning of premeditation and deliberation cannot be entirely abstracted from the facts of any particular case. Yet, this Court has carefully recognized that the premeditation and deliberation of first-degree murder differs substantially from the "specific intent to kill" or the "malice aforethought" required for murder generally. *People v Morrin*, 31 Mich App 301; 187 NW2d 434 (1971). The Court stated there:

"Accordingly, it underscores the difference between the statutory degrees of murder to emphasize that premeditation and deliberation must be given independent meaning in a prosecution for first-degree murder. The ordinary meaning of the terms will suffice. To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'." 31 Mich App at 329–330.

The presence of premeditation and deliberation can be inferred from the character of the weapon used, the wound inflicted, the prior relationships between the parties, and other evidence surrounding the killing. *People v Berthiaume*, 59 Mich App 451, 459; 229 NW2d 497 (1975), *lv den*, 394 Mich

788 (1975), *People v Gill,* 43 Mich App 598, 602–603; 204 NW2d 699 (1972), *lv den,* 389 Mich 785 (1973), *People v Lem Dumas,* 25 Mich App 173; 181 NW2d 89 (1970). See *People v Griner,* 30 Mich App 612; 186 NW2d 800 (1971), *People v Wolf,* 95 Mich 625, 629; 55 NW 357 (1893).

This Court finds that the evidence does indicate a factual basis from which premeditation and deliberation could be independently inferred. The deceased was shot in the head with a shotgun. Powder burns on her cheek allowed the inference that the weapon was positioned close to her head. Defendant alleged the gun discharged accidentally when placed on the bed. Yet, where the gunshot entered deceased, the height of the bed and the location in the wall opposite the bed of pellets from the gun's discharge indicate the weapon was aimed downward. Finally, the threatening letter was strong evidence of premeditation and deliberation.

5. Given the evidence, which by this opinion we hold to be admissible, this Court cannot say that the trial court erred in instructing the jury on first-degree murder. No objection was raised at trial. As a result, only a showing of manifest injustice will cause us to reverse. *People v Bethea, supra, People v McGuire,* 39 Mich App 308; 197 NW2d 469 (1972), *lv den,* 387 Mich 810 (1972), *People v Miller,* 35 Mich App 627; 192 NW2d 517 (1971), *lv den* 386 Mich 764 (1971). Sufficient evidence of premeditation and deliberation was adduced to permit an inference of first-degree murder. *People v Treadwell,* 63 Mich App 299; 234 NW2d 494 (1975), *People v Berthiaume, supra, People v Meier,* 47 Mich App 179; 209 NW2d 311 (1973).

Consequently, any argument that the jury find-

ing of second-degree murder was a compromise verdict will not stand. *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), *People v Watkins,* 36 Mich App 380; 193 NW2d 914 (1971), *People v Hansen,* 368 Mich 344; 118 NW2d 422 (1962).

Affirmed.