# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOSHUA ALLAN HOLWERDA,

      Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No. 323100
Kent Circuit Court
LC No. 13-009288-FH

Before: OWENS, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of three counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with a victim between 13 and 16 years of age). The trial court sentenced defendant as an habitual offender, fourth-offense, MCL 769.12, to concurrent terms of 26 to 52 years' imprisonment. Defendant now appeals as of right. Because defendant was not denied the effective assistance of counsel, the prosecutor did not commit prosecutorial error, and defendant's sentence as an habitual offender under MCL 769.12(1)(a) was not unconstitutional, we affirm.

Defendant's convictions arose from events that transpired on June 27, 2013, between defendant and the two underage victims, MR and MS, who were 13 and 14 years old, respectively. At trial, both victims testified that they made contact with defendant on Facebook on June 27, 2013, whereupon they began chatting with him. Among other things, the victims' Facebook conversation with defendant focused on "hanging out" and smoking marijuana. At some point, the conversation turned toward the topic of sex; specifically, defendant offered to trade marijuana for sexual favors, and the girls agreed to meet defendant that day. Thereafter, defendant picked the victims up and brought them to his home. Testimony from both victims indicated that, while at defendant's house, defendant engaged in both oral and vaginal penetration with MR, and oral penetration with MS. When the encounter was over, defendant gave the victims marijuana as promised and drove them home. The victims had further contact with defendant on July 10, 2013, when it was again arranged, via Facebook, for defendant to give the victims marijuana in exchange for sex. However, according to the victims' testimony, no sexual activity actually occurred on this second occasion because they could not find a private place to go.

At defendant's trial, Detective Scott Rittenger of the Wyoming Police Department testified that he obtained Facebook records for defendant, MS and MR. The records from MS's account showed that she chatted with defendant on both June 27, 2013, and July 10, 2013. While the content of the June 27, 2013 messages had been deleted,[1] the July 10, 2013 messages, which referred to a previous encounter, corroborated the victims' testimony. The records from defendant's account showed no history whatsoever before July 15, 2013, leading Detective Rittenger to opine that defendant had deleted his Facebook account before reactivating it. The jury convicted defendant of three counts of CSC-III, and the trial court sentenced defendant as noted above. Defendant now appeals as of right.

On appeal, defendant first raises several claims of ineffective assistance of counsel. In particular, defendant claims that counsel provided ineffective assistance by (1) failing to challenge the authentication of the Facebook records, (2) failing to object when Detective Rittenger "interpreted" defendant's Facebook records, (3) failing to object to the admission of MR's written police statement, and (4) failing to cite MRE 801(d)(1)(A) as a basis for introducing the transcript of MR's preliminary examination testimony as impeachment evidence.

Defendant failed to raise a claim of ineffective assistance of counsel in the trial court by moving for a new trial or a *Ginther*[2] hearing. Consequently, defendant's claims are unpreserved, and our review is limited to errors apparent on the existing lower court record. *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). To prevail on a claim of ineffective assistance of counsel, a defendant must establish "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Decisions regarding what evidence to present, how to question witnesses, and whether to object to the admission of evidence are presumed to be matters of trial strategy, and this Court will not second-guess strategic decisions with the benefit of hindsight. *People v Eliason*, 300 Mich App 293, 302-303; 833 NW2d 357 (2014); *Horn*, 279 Mich App at 39. Moreover, a defendant claiming ineffective assistance, bears the burden of establishing the factual predicate of his claim. *Douglas*, 496 Mich at 592.

Defendant first asserts that his trial counsel was ineffective for failing to challenge the admissibility of MS's Facebook records on the grounds that the messages could not be authenticated as having actually been sent by defendant.[3] MRE 901 governs the authentication

---

[1] MS testified that she deleted the June 27th conversation at defendant's request, after defendant told her that he did not want anyone to find out about the encounter.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Aside from MS's records involving conversations with defendant, Facebook messages to and from several individuals were discussed at trial. Defendant does not specifically identify what Facebook records his trial counsel should have objected to, but since defendant's own records

of records and provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(b) sets forth, "[b]y way of illustration only," various means by which evidence may be authenticated, including through the elicitation of testimony from a "witness with knowledge . . . that a matter is what it is claimed to be," MRE 901(b)(1), or through evidence of "distinctive characteristics," meaning "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," MRE 901(b)(4). Under MRE 901, "[p]roof that the proffered writing is authentic may be made by direct or circumstantial evidence." *Champion v Champion*, 368 Mich 84, 88; 117 NW2d 107 (1962). Indeed, "a trial court may consider *any* evidence regardless of that evidence's admissibility at trial, as long as the evidence is not privileged, in determining whether the evidence proffered for admission at trial is admissible." *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (2013) (quotation omitted). Ultimately, to be admissible, the "proposed evidence need not tell the whole story of the case, nor need it be free of weakness or doubt;" rather, it "need only meet the minimum requirements for admissibility." *Id.* (quotations omitted).

In this case, based on the totality of the record evidence, it is apparent that there is more than sufficient evidence to support the prosecution's claim that the messages in question were Facebook messages from defendant to MS, and consequently counsel was not ineffective for failing to object on this basis. First, the records obtained by Detective Rittenger from Facebook, and admitted into evidence, displayed defendant's name as a "recipient" and "author" in the conversation, demonstrating that the messages were sent to and from defendant's Facebook account, and MS reviewed the records at trial, explaining the content of her conversation with the individual identified as defendant. Second, circumstantial evidence demonstrated that defendant was in fact the person chatting with MS. For example, as pertaining to the June 27, 2013 conversation, the entirety of which was deleted, MS testified that she was instructed to delete the messages by defendant. Defendant's knowledge of the conversation and his instructions to delete the conversation, support the conclusion that the messages were sent and received by defendant. As pertaining to the July 10, 2013 conversation, the person identified as defendant in that conversation knew intimate details about the June 27, 2013 sexual encounter with MS and MR, such as the fact that defendant had used a condom. These details would only be known by defendant, MS, and MR, which again supports the conclusion that defendant sent and received the messages in question. Cf. *People v Ford*, 262 Mich App 443, 461; 687 NW2d 119 (2004). Finally, on both occasions in which the person identified as defendant chatted with the victims about making plans to meet, the conversation was immediately followed by the victims meeting with defendant. Because there was clearly sufficient evidence to authenticate the Facebook records, any objection to the records on this ground would have been futile. Defense counsel is not ineffective for failing to advance a meritless position. See *People v Fonville*, 291 Mich App 363, 384; 804 NW2d 878 (2011).

---

showed no conversations, and since the only portions of MR's records discussed at trial pertained to conversations she had with people other than defendant, we assume that defendant's argument focuses on the messages between him and MS, obtained from MS's account.

Defendant also asserts that his trial counsel was ineffective for failing to object to Detective Rittenger's testimony "interpreting" the Facebook records because there was no foundation regarding Detective Rittenger's familiarity with Facebook records. Specifically, Detective Rittenger testified that he obtained defendant's records from Facebook's legal department in response to a search warrant. However, the records he received showed no history on defendant's account before July 15, 2013. In comparison, records from MS's Facebook account showed that defendant had Facebook conversations with her on June 27, 2013, and July 10, 2013. Thus, since absolutely no trace of those conversations was found in defendant's account history, Detective Rittenger opined that defendant must have deleted his account.

Defendant now claims that his counsel should have challenged Detective Rittenger's familiarity with Facebook records and the basis for Detective Rittenger's testimony. But, defendant's claim must fail because there is nothing in the record to suggest that Detective Rittenger lacked the basic knowledge necessary to "interpret" the meaning of the records in question and to reach the logical conclusion that defendant's account had been deleted.[4] Indeed, there is also no indication that Detective Rittenger was mistaken in his understanding of the records. Thus, defendant has not overcome the presumption that counsel's decision not to object was a matter of trial strategy, and he has not shown a reasonable probability that any objection to this testimony would have resulted in a different outcome, particularly when MS also testified at trial that defendant "deleted his Facebook." On this record, defendant has not shown that he was denied the effective assistance of counsel on this basis.

Defendant next argues that his trial counsel was ineffective for failing to object to the admission of MR's police statement into evidence. The prosecutor argues on appeal that the statement was admissible under MRE 801(d)(1)(B) as a prior consistent statement and that counsel was not ineffective for failing to raise a futile objection to this evidence. We need not resolve that question, however, because even if no rule of evidence supported the admission of the statement, defendant is unable to overcome the presumption that his trial counsel's failure to object was anything other than trial strategy. Defense counsel made a concerted effort to undermine MR's credibility during trial by eliciting evidence that she gave inconsistent versions of her story at various different times to, for example, her father, the police, in her preliminary examination testimony, and ultimately at trial. In response to this questioning, MR admitted that defendant never physically forced her to perform sex acts, but she acknowledged that she had previously claimed as much to her father and also to the police. She then also testified that she could not recall what she told police. It was in response to this testimony that the prosecution introduced MR's police statement, which contained no reference to being forced to perform sexual acts. Defense counsel could have reasonably believed that admitting MR's police

---

[4] In fact, Detective Rittenger's common sense conclusion is supported by comparing defendant's Facebook account to MS's. MS admitted deleting messages from her account pertaining to the June 27, 2013 conversation, but evidence of those messages still existed, even though the content of the messages had been erased. Thus, the fact that defendant's account showed no history whatsoever before July 15, 2013, supports that he did more than simply erase the conversation; he deleted his entire account.

statement, even if largely consistent with her trial testimony, would further support the argument that MR had given differing accounts of the June 27, 2013 encounter and that she was unable even to recall what she said at different times, thereby undermining her veracity. Because there was a legitimate strategic reason for failing to object to the admission of the police statement, we will not second-guess defense counsel's decision on the matter. And, given that this statement was consistent with MR's trial testimony and that it was corroborated by other evidence, including MS's testimony and the Facebook records, the admission of this cumulative evidence was not prejudicial to defendant. See *People v Gursky*, 486 Mich 596, 620-624; 786 NW2d 579 (2010). Thus, defendant has not shown that, but for counsel's failure to object, there was a reasonable probability of a different outcome. See *Douglas*, 496 Mich at 592.

Defendant finally asserts that his trial counsel was ineffective for failing to make a more concerted effort to admit the transcript of MR's preliminary examination testimony into evidence, and in particular for failing to argue before the trial court that this transcript was admissible under MRE 801(d)(1)(A). As noted above, defense counsel sought to undermine MR's credibility at trial, and he used the transcript of MR's preliminary examination testimony extensively for this purpose. At one point, defense counsel attempted to admit the entire transcript as impeachment evidence, but counsel then withdrew that request after the trial court asked counsel to articulate an evidentiary basis for admitting the transcript. On appeal, defendant now asserts that the transcript could have been admitted under MRE 801(d)(1)(A) as a prior inconsistent statement. However, defendant's reliance on that rule is misplaced. Certainly, under MRE 801(d)(1)(A), defense counsel was entitled—just as he did—to refer MR to various statements in her preliminary examination testimony which were inconsistent with her trial testimony. However, MRE 801(d)(1)(A) only allows for the introduction of statements that are "inconsistent with the declarant's testimony." In other words, the rule does not provide for the blanket admission of an entire transcript of a witness's previous testimony. Defendant makes no effort on appeal to justify why MR's *entire* preliminary examination testimony should have been admitted, and we see no basis for concluding that counsel was ineffective for failing to pursue this matter at trial. See *Fonville*, 291 Mich App at 384. Moreover, given counsel's thorough efforts to undermine MR's credibility at trial, including cross-examination regarding her statements at the preliminary examination, defendant has not shown that admission of the transcript itself, or portions thereof, would have created a reasonable probability of a different outcome. See *Douglas*, 496 Mich at 592. Overall, defendant has not established that he was denied the effective assistance of counsel.

Defendant next argues that he was deprived of a fair trial by various instances of prosecutorial misconduct. Specifically, he argues that the prosecutor committed misconduct during closing argument by arguing facts not in evidence, by commenting on the credibility of witnesses and by making several comments which shifted the burden of proof. Because defendant did not object to any of the allegedly improper remarks at trial or request a curative instruction, we review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

We have reviewed each of the challenged comments, and find no merit to defendant's arguments. Generally speaking, prosecutors enjoy great latitude regarding their arguments at trial, and they are free to "argue the evidence and reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272

(2008). Contrary to defendant's argument in this case, at no point did the prosecutor argue facts not in evidence or improperly assert a special knowledge of the witnesses' credibility. Rather, the prosecutor's arguments, including her comments on credibility, were reasonably based on the evidence presented. See *id*.; *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004); *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996). Moreover, at no point did the prosecutor improperly shift the burden of proof. Rather, her arguments properly highlighted the weaknesses in defendant's theory of the case and the evidence presented by defendant. See *People v Fryda*, 288 Mich App 446, 464-465; 793 NW2d 712 (2010); *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). Moreover, even assuming that any of the prosecutor's remarks were improper, the errors did not affect the outcome of the proceedings given that the evidence against defendant was overwhelming and that any potential prejudice stemming from the remarks was alleviated by the trial court's instructions to the jury regarding the burden of proof, their duty to decide the case on the evidence, and the fact that the lawyers' arguments were not evidence. See *Fryda*, 288 Mich App at 465; *Thomas*, 260 Mich App at 456. Simply put, the challenged remarks did not deny defendant a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). Defendant has not shown plain error. See *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

Defendant finally argues that the 25-year mandatory minimum sentence set forth for habitual offenders in MCL 769.12(1)(a) violates the Michigan constitution's separation of powers doctrine. In particular, defendant contends that statutes imposing mandatory minimums, such as MCL 769.12(1)(a), deny judges the sentencing discretion necessary to perform their judicial function and that these mandatory minimums therefore violate the separation of powers.

We review a constitutional claim involving the separation of powers de novo. *People v Garza*, 469 Mich 431, 433; 670 NW2d 662 (2003). However, defendant failed to preserve his constitutional challenge, meaning that our review is for plain error affecting substantial rights. *People v Shafier*, 483 Mich 205, 211; 768 NW2d 305 (2009). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011) (quotation marks and citation omitted).

The separation of powers doctrine, as set forth in Michigan's constitution, states:

The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]

Regarding criminal sentencing, the Michigan constitution states that "[t]he legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences." Const 1963, art 4, § 45. Thus, as our Supreme Court has explained, "the ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001), citing Const 1963, art 4, § 45. See also *People v Raihala*, 199 Mich App 577, 579 n 1; 502 NW2d 755 (1993) ("[T]he power to establish sentences, including indeterminate sentences, is an exclusively legislative function.").

On the other hand, "[t]he authority to impose sentences and to administer the sentencing statutes enacted by the Legislature lies with the judiciary." *Hegwood*, 465 Mich at 436-437. When it imposes a sentence, the judiciary has the power to exercise discretion. *People v Conat*, 238 Mich App 134, 147; 605 NW2d 49 (1999). "However, this sentencing discretion is limited by the Legislature, which has the power to establish sentences." *Id*. Thus, for example, the Legislature may prescribe minimum and maximum sentences for a particular offense, and it may limit the discretion available to the courts by requiring mandatory sentences. See *Garza*, 469 Mich at 434; *People v Palm*, 245 Mich 396, 404; 223 NW 67 (1929); *Conat*, 238 Mich App at 147. "In other words, the Legislature has the exclusive power to determine the sentence prescribed by law for a crime, and the function of the court is only to impose [a] sentence under and in accord with the statute." *Conat*, 238 Mich App at 147 (internal quotation marks and citations omitted). See also *Hegwood*, 465 Mich at 437 ("It is, accordingly, the responsibility of a circuit judge to impose a sentence, but only *within the limits* set by the Legislature."). "The separation of powers clause . . . is not offended by the legislature delegating sentencing discretion in part and retaining sentencing discretion in part." *People v Hall*, 396 Mich 650, 658; 242 NW2d 377 (1976).

In light of the above principles, we reject defendant's argument. Simply put, by enacting MCL 769.12(1)(a), the Legislature properly exercised its authority, vested in it by Const 1963, art 4, § 45, to provide penalties for criminal offenses, and in particular to set punishment for fourth-offense habitual offenders who have previously committed certain offenses and who subsequently commit serious crimes. The fact that, in so doing, the Legislature removed the judiciary's discretion to impose a lesser sentence under such circumstances does not render the statute unconstitutional. See *Hegwood*, 465 Mich at 437; *Hall*, 396 Mich at 658; *Conat*, 238 Mich App at 147. Accordingly, there is no plain error affecting defendant's substantial rights.[5] See *Shafier*, 483 Mich at 211.

Affirmed.

/s/ Donald S. Owens
/s/ William B. Murphy
/s/ Joel P. Hoekstra

---

[5] Indeed, in this case in particular, while defendant complains about the mandatory minimum of 25 years, the trial court exceeded this minimum and imposed a minimum of 26 years' imprisonment. In these circumstances, where the trial court exercised its discretion to exceed the mandatory minimum sentence, it would defy logic to suggest that defendant was prejudiced by the Legislature's enactment of a mandatory minimum. Cf. *People v Lockridge*, 498 Mich 358, 395 n 31; __ NW2d __ (2015).